EASTERN DIST. *February,* 1840.

THE STATE
*vs.*
JUDGE
BERMUDEZ.

So, where factors or commission merchants accepted drafts on the faith of the defendant's promise to ship and consign a certain quantity of cotton : *Held,* that the consignees will hold the cotton, so consigned, against the attaching creditors of the defendant.

## STATE OF LOUISIANA *vs.* JUDGE BERMUDEZ.

### ON AN APPLICATION FOR A MANDAMUS.

The Supreme Court disclaims a general superintending control over the inferior jurisdictions ; but it will exercise every power incident to its *appellate* jurisdiction, as defined by the constitution, and in the forms prescribed and established by the legislature.

The authority of the legislature must, however, be considered, in relation to the constitution, which allows this court appellate jurisdiction only, and in matters which have a tendency to aid this jurisdiction.

This court cannot direct inferior courts what judgments they are to render, but in cases in which it is their duty *to proceed* and take cognizance, they may be so directed, and their judgments appealed from, as in other cases.

It is only in relation to courts acting judicially, and in cases in which an appeal might be prosecuted to this court after final judgment, that it will issue writs of *procedendo* or *mandamus.*

So, on a refusal of the judge of probates, on the application of the tutrix to appoint an under-tutor to her minor children, and order a family meeting, with a view to relieve her property from a general mortgage, and give a special one, a peremptory *mandamus* will be awarded requiring him to proceed.

It is the duty of the judge of the parish, where the minor has his domicil, to appoint an under-tutor as soon as a vacancy occurs.

This is an application for a *mandamus*, to be directed to the judge of probates for the parish and city of New-Orleans, commanding him to grant a certain order, and perform certain duties set forth in the following affidavit of the attorney of the widow Fortier, the applicant : ·

EASTERN DIST.
*February*, 1840.

THE STATE
*vs.*
JUDGE
BERMUDEZ.

"Madame Annette Lallande, widow of Adelard Fortier, deceased, now residing in the parish of New-Orleans, shows, that the late Adelard Fortier died in the parish of Jefferson, in June, 1833, and his succession opened in the court of probates for that parish ; that she was confirmed as the natural tutrix of her minor children, and Joseph Lallande was appointed under-tutor ; that she has rendered an account of her administration, as tutrix, which has been duly homologated by the Court of Probates for the parish of Jefferson ; according to which, the succession of Fortier is liquidated, and the portion of each of the minor children ascertained to be four thousand three hundred and sixty-two dollars.

"That since the death of her husband, she has removed with her minor children to the parish of New-Orleans, where she has resided for the last four years, and where she has since bought property in her own name ; that said Joseph Lallande, the under-tutor of said minors, has resigned his functions, and no under-tutor has been appointed ; that desiring to avail herself of the privilege granted to her by law to give a special mortgage on her property in favor of her children, and thereby avoid the general mortgage resulting from her tutorship, she has applied, by petition, to the judge of the Court of Probates for the parish and city of New-Orleans, where she resides, to have an under-tutor appointed to her minor children ; and also an order that a family meeting, composed of the nearest relations, be convened before a notary, according to law, to take into consideration the subject matter of said petition ; which said order, this affiant avers, the judge of probates refuses to grant, on the ground that the succession of Adelaide Fortier was opened in the parish of Jefferson, and he has no jurisdiction over the same, but the judge of the Court of Probates for the said parish of Jefferson, has exclusive jurisdiction."

EASTERN DIST.
February, 1840.

THE STATE
*vs.*
JUDGE
BERMUDEZ.

*Grima,* for the widow Lallande, applied for the *mandamus,* ordering the probate judge to grant the order for the family meeting, and appoint an under-tutor, on the following grounds :

1. That the appointment of tutors to minors, belongs to the judge of probates of the domicil or residence of the father and mother of the minors. *Code of Practice, article* 944.

2. In all cases concerning minors, the judge of the minor is the judge of the Court of Probates, within whose jurisdiction the minor resides. 2 *Moreau's Digest,* 59, *section* 8.

3. The domicil of the minor is that of the tutor. *Code of Practice,* 48.

4. The proceedings of a Court of Probates of a parish in which neither the minor, his tutor, nor under-tutor resides, are null and void. 9 *Martin,* 489.

*Bermudez, J.,* showed cause in writing :

1st. That the Supreme Court was without jurisdiction to issue a *mandamus* in this case, because it possesses appellate jurisdiction only. *Constitution of Louisiana, article* 4, *section* 2.

2. The tutor is required to give bond and security, which is to be taken by the judge of probates, who has appointed or confirmed him in office. *Louisiana Code,* 330, 331, 3298, 3308 ; *Session Acts of* 1830, *page* 46, *section* 1 ; *Code of Practice,* 997.

3. The jurisdiction of this judge lasts as long as the tutorship, and cannot be avoided by the change of domicil. *Code of Practice,* 997.

4. The appointment of the family meeting must be made by the judge who appointed or confirmed the tutor. *Louisiana Code,* 307 ; *Code of Practice,* 997.

5. The Probate Court of the parish of New-Orleans, has neither the means nor the jurisdiction to ascertain and know the liabilities of the tutrix ; and the nearest relations and friends of the minors, whose father died in the parish of Jefferson, reside there, which is an additional reason why the probate judge of that parish should have the exclusive control of this matter.

*G. B. Duncan* appeared at the bar, and argued on behalf of the judge.

A re-argument, on a re-hearing, was had in this case.

EASTERN DIST.
*February*, 1840.

THE STATE
vs.
JUDGE
BERMUDEZ.

*Eustis* and *Grima*, for the applicant, on the re-argument, insisted that the Supreme Court had jurisdiction, and was competent to grant the *mandamus*.

1. That this was a Supreme Court of appellate jurisdiction, with a revisory power over the inferior tribunals, and to grant relief in all cases where justice and reason require it.

2. An appeal to the Supreme Court lies in all final decrees of the inferior courts, over which this court has appellate jurisdiction, in all matters of controversy where the amount exceeds three hundred dollars.

3. The refusal of the Court of Probates to appoint an undertutor, and order the family meeting as prayed for, is a final decree of said court, and this court possesses the remedial power to prevent a failure of justice.

4. The article 4, section 2, of the Constitution of Louisiana, which declares that the Supreme Court shall have *appellate jurisdiction only*, must be construed, in contradistinction from original jurisdiction, and according to the laws in force in this country when the constitution was framed.

5. That whether the Supreme Court acts by *mandamus* or otherwise, in reviewing a case, it is not less in the exercise of its appellate jurisdiction, and -that this appellate jurisdiction is merely exclusive of original jurisdiction.

6. The articles 828, number 2, and 838–9, of the Code of Practice, are declaratory of the legislative will, as to the construction of the Constitution of Louisiana, on the question of jurisdiction of the Supreme Court, as a court of appellate jurisdiction only.

*Bullard, J.*, delivered the opinion of the court.

We have given to the question presented by this application, no ordinary share of attention and consideration. It is one which concerns the constitutional limits of our jurisdiction, and involves the inquiry, how far we are bound to exercise

EASTERN DIST.
February, 1840.
─────────
THE STATE
vs.
JUDGE
BERMUDEZ.

those powers expressly given to us by the Code of Practice, of issuing certain writs, addressed to inferior courts "for the purpose of insuring a better administration of justice," and particularly the writ of *mandamus*, as provided by article 838, of the Code of Practice, "where the judges of inferior courts are guilty of a denial of justice, or unreasonable delay in pronouncing judgment on causes before them, but also if they refuse or neglect to perform any of the duties required of them by law, or which may enable the superior courts to exercise their appellate jurisdiction." If the exercise of these powers be not forbidden by the constitution, we are bound to obey.

Our jurisdiction is declared to be appellate only. The essential correlative, in matters of appellate jurisdiction, is *original*. The constitution forbids, undoubtedly, the cognizance, by this court, of any case in the first instance. It pre-supposes the action of some other court, and the revision, by this, of its proceedings; or, at least, the application to some other tribunal for its judicial action, and a refusal to act. To adopt the language of chief justice Marshall, " it is the essential criterion of appellate jurisdiction, that it revises and corrects the proceedings, in a cause already instituted, and does not create that cause." *1st Cranch*, 175.

We do not doubt the authority of the legislature to regulate the exercise of this appellate power, in all civil cases in which the matter in controversy exceeds three hundred dollars. It is competent to introduce new forms of proceedings, by which the judicial acts of other courts, in such cases, may be revised in this, and is not restricted to an appeal, technically so called, as the exclusive form. Cases may well be supposed, in which a formal appeal could not be taken, and the judgment of the appellate court pronounced, after hearing both parties, from the impossibility of making an appellee. Suppose an application to a judge for an order of seizure and sale, in cases where the law allows it in the first instance, and he declines to act at all. Our judicial system would be imperfect, if the errors of a judge, in such a case, could not be corrected. Yet the remedy, by appeal, in the form

now prescribed, might not be applicable, as the case pre-supposes that no final judgment has been rendered. Such an application is essentially a suit on *a case*, in which the party seeks a remedy in a court of justice, which the law affords him.

Among the first judgments pronounced by this court, was that by which it disclaimed a *general. superintending* control over the inferior jurisdictions. *Laverty* vs. *Duplessis*, 3 *Martin*, 42 *and* 54. We still disclaim such authority, but we are bound to exercise every power incident to our appellate jurisdiction, as defined by the constitution, and in the forms and manner established by legislative authority. The right to issue a *mandamus* to courts of inferior jurisdiction, has always been asserted, whenever such mandate became necessary for the exercise of the appellate jurisdiction of this court.

In the case of Winn *vs.* Scott, this court said that the expressions of the Code of Practice seem to embrace all possible cases, but the authority there granted, must be considered in relation to the Constitution, which allows this court appellate jurisdiction only, and its mandates must be confined to matters which have a tendency to aid that jurisdiction. 2 *Louisiana Reports*, 38.

We certainly cannot, in any case, direct the inferior courts to render a particular judgment, or what judgments they shall render. But in cases in which, in our opinion, it is their duty to proceed, and take cognizance of a case, we may so direct; and if the judgment afterwards rendered, or order given, be appealed from, we have a right to render such judgment ourselves, as the justice of the case may require; and if the order be a preliminary one, and necessarily *ex parte*, we see no good reason why the appeal should not be of the same character. It is only in this way, we can give effect to the provisions of the code in question, and proceed to settle questions of jurisdiction without a formal appeal in the forms now established by other provisions of the code. But it is only in relation to courts, acting judicially, and in cases in which an appeal might be prosecuted to this court,

EASTERN DIST.
*February*, 1840.

THE STATE
*vs*
JUDGE
BERMUDEZ.

The Supreme Court disclaims a general super-intending control over the in-ferior jurisdic-tions; but it will exercise every power incident to its appellate jurisdiction as defined by the constitution, and in the forms prescribed and established by the legislature. The authority of the legislature must, however, be considered in relation to the constitution, which allows this court appel-late jurisdiction only, and in matters which have a tendency to aid this juris-diction.

This court cannot direct in-ferior courts what judgments they are to ren-der, but in cases in which it is their duty *to pro-ceed* and take cognizance they may be so di-rected, and their judgments ap-pealed from, as in other cases.

It is only in relation to courts acting judicially, and in cases in which an appeal might be prose-cuted to this court after final judgment, that it

EASTERN DIST. after final judgment, that we feel ourselves authorized to
February, 1840. issue writs of *procedendo*, or *mandamus*.

THE STATE
*vs.*
JUDGE
BERMUDEZ.

will issue writs
of *procedendo*, or
*mandamus*.

In the case which now presents itself, the judge of probates
declines to take cognizance of an application, by a tutrix, for
the appointment of an under-tutor to her minor children, and
for the convocation of a family meeting, with a view to relieve
her property from the general legal mortgage in favor of the
minors, on offering other adequate security. The grounds
stated by the judge, in his answers to the rule, are, in substance,
that, although the domicil of the minors may have been
changed since the confirmation of the tutrix, yet the judge of
probates of the parish, by whom the appointment was made,
and the security was received, still retains exclusive juris-
diction in relation to any change in the security, or the convo-
cation of a family meeting ; that the jurisdiction of this judge
lasts as long as the tutorship, and cannot be avoided by the
change of domicil.

So, on a re-
fusal of the judge
of probates, on
the application
of the tutrix, to
appoint an under
tutor to her mi-
nor children,
and order a fa-
mily meeting,
with a view to
relieve her pro-
perty from a
general mort-
gage and give a
special one, a
peremptory *man-
damus* will be
awarded, requir-
ing him to pro-
ceed.

It appears to us, the principal and material inquiry is,
whether the judge of probates of the parish of Orleans is
bound to appoint an under-tutor to minors whose domicil is
in his parish. That is the first step to be taken, for the
proceedings, in relation to the security to be given by the
tutors, and must be carried on contradictorily with the under-
tutor.

We have no doubt that the judge is bound to proceed and
appoint an under-tutor, as soon as a vacancy occurs. It is
the judge of the parish where the minor has his domicil, who
is to make the appointment. *Louisiana Code,* 289.

It is the duty
of the judge of
the parish where
the minor has
his domicil, to
appoint an under
tutor as soon as a
vacancy occurs.

The code appears to contemplate cases in which the
general legal mortgage on the property of the tutor may be
restricted, even during the tutorship, and where such
restriction did not take place at the time of the appointment.
*Louisiana Code,* 3308, 3309.

It is, therefore, ordered, adjudged and decreed, that the
judge of the Court of Probates proceed to take cognizance
of the plaintiff's petition, and to make an appointment of
under-tutor, according to law.