THE STATE *v.* THE JUDGE OF THE COURT OF PROBATES OF
NEW ORLEANS.

So long as a tutrix continues to act, her domicil is that of the minor.

Where the legal tutor of a minor changes his domicil after the tutorship has devolved
upon him, the new domicil of the tutor will become that of the minor, for all pur-
poses connected with the administration of the estate, and for the appointment of a
successor in case of the tutor's death. *Aliter*, in France, where the tutor is dative.

The office of under-tutor is always dative; and no law compels any one to accept
such an appointment.

The resignation of an under-tutor must be addressed to the Court of Probates of the
parish in which the minor has his domicil; and it is the duty of the judge of that
court to accept the resignation when tendered, and to appoint his successor.

The answer to a rule to show cause taken against the judge of an inferior court, must
be in writing, and filed with the clerk of the Supreme Court. No answer in person,
or oral discussion will be listened to, except from the parties interested, or their
counsel.

APPLICATION for a mandamus to the Judge of the Court of
Probates of New Orleans.

BULLARD, J.  The tutrix of Gabriel Fuselier, a minor, who resides
and is domiciled in the city and parish of New Orleans, together
with the under-tutor, who resides in the parish of St. Martin, unite
in a petition, in which they state that the Court of Probates had
ordered a family meeting to be held before a notary in this city,
and that the said under-tutor had been notified to attend, but that,
it being inconvenient for him to attend at so great a distance from
his residence, he had petitioned the court to discharge him from
his functions, and that the tutrix had united with him in a petition
to that court to proceed to the appointment of another under-tutor
in his place ; but that the Court of Probates for the parish of New
Orleans had refused both to discharge the said under-tutor, and to
appoint a successor ; and they pray for a mandamus. Whereupon a
rule was taken on the judge to show cause why he should not
proceed to discharge the present under-tutor, and to make a new
appointment.

*Bermudez,* Judge of the Court of Probates of the parish of
New Orleans, showed cause. The appointment of tutor and under-
tutor to the minor, appertains exclusively to the Probate Judge of
the parish of St. Martin, within whose jurisdiction the father was

born, lived, and died. Civ. Code, 289, 300. Code of Prac. 944, 945. If either wish to resign, the resignation must be tendered to the judge who appointed him. Civ. Code, 319. He alone can remove. Code of Prac. 1013. All causes of incapacity, exclusion, or removal of the tutor, apply to the under-tutor. Civ. Code, 325. Every act of a tutor or under-tutor, from the time of his appointment to that of his final discharge, is exclusively under the control of the judge from whom his appointment is held. The legislation of France is substantially the same with our own, as to the domicil of the minor, and the convocation and composition of family meetings. Magnin, No. 340, says :

*Suivant l' article* 406 (corresponding to art. 289 of the Civil Code of this State,) *c'est le domicile du mineur qui règle la compétence du juge de paix, ainsi le siège du conseil de famille est de plein droit chez le juge de paix du domicile de la tutelle,* (the domicil of the deceased father, says art. 944 of the Code of Practice,) *à moins que par le droit de son pouvoir discrétionnaire sur ce point il n' ait désigné un autre local pour réunir les membres du conseil de famille.* Code Nap. art. 413. Civ. Code, art. 308.

No. 74. *Lorsque le tuteur légal est décédé dans un endroit éloigné de son véritable domicile, cette circonstance ne change pas le lieu de l'ouverture de la tutelle, laquelle dès l'instant de son décès se trouve fixé dans celui de son domicile de droit; ainsi dans ces exemples le juge de paix du domicile des père et mère, tuteurs de droit de leurs enfans mineurs, est seul compétent pour présider le conseil de famille.*

No. 78. *Lorsque le conseil de famille a été présidé par le juge de paix du domicile du tuteur légal, la compétence se trouve définitivement fixée devant le juge de paix; ainsi le domicile du nouveau tuteur légal, quoique fort éloigné de celui de l'ouverture de la tutelle, ne change pas la compétence du juge de paix. Une fois que le conseil de famille a été présidé par un juge de paix compétent et légalement constitué, toutes les assemblées de famille pendant la durée de la minorité doivent continuer leurs délibérations devant ce juge de paix. Il serait contraire aux intérêts des mineurs qu'on pût, selon les changemens de tuteurs. porter successivement la délibération des conseils de famille devant le juge de paix du domicile de chacun des nouveaux tuteurs. Sur ce point*

*la jurisprudence est uniforme.   L' un des considérans de la Cour de Cassation, du 23 Mai, 1819, est remarquable.   Il porte qu' on ne peut induire rien de contraire à la disposition de l' art.* 108, [Civ. Code, 48,] *suivant lequel le mineur a son domicile chez son tuteur, puisque cette disposition n'a pour objet de régler le domicile du mineur que pour la gestion du tuteur, d' où il suit que ce domicile cessant par la mort du tuteur, le domicile naturel du mineur reprend toute sa force et doit régir la nomination du tuteur.   Qu'enfin, si la conseil de famille devait suivre les juges de paix des divers domiciles que pourraient prendre successivement les tuteurs, il pourrait s'en suivre l'inconvénient grâve de soustraire les tuteurs à la surveillance naturelle du véritable conseil de famille, et de livrer le mineur à l'arbitraire des conseils étrangers à sa personne et indifférens à ses intérêts ; tandis que en général cet inconvénient cesse par l'attribution de toutes les nominations à un conseil de famille composé de la manière prescrite par les articles* 407 *et* 409, *et convoqué devant le juge de paix du domicile naturel du mineur conformément à l'art.* 406.

*Aux considérations de cet arrêt on peut ajouter, que l'ordre de l'administration de la tutelle exige que la minute des délibérations du conseil de famille, de tous les actes relatifs à la tutelle, soient dans le même dépôt, afin de se procurer dans un instant tous les renseignemens dont on a besoin sur l'administration des tuteurs."*

Toullier, vol. 2, No. 1114.   Sirey, year 1809, 29th Nov. p. 63. Ib. year 1819, 23d March, p. 523.   Paillet, notes on art. 407, Code Nap.   Duranton, vol. 2, *verbo,* Conseil de Famille.   Dictionnaire Général et Raisonné de Droit Civil Moderne, *verbo,* Conseil de Famille, p. 384, No. 4.   Delvincourt, vol. 1, p. 110, No. 5.   Ib. p. 116, No. 4.   Nouveau Ferrière, vol. 1, p. 438, *verbo,* Conseil de Famille.   Journal du Palais, vol. 15, 20 Avril, 1820, p. 993.   Ib. vol. 22, 24 Novr., 1829, p. 1548.   Ib. 1838, vol. 2, 17th May, 1838, p. 436.   Bousquet, vol. 1, p. 6.

BULLARD, J.   The judge shows for cause : That the appointment of the tutrix and under-tutor of the minor, Fuselier, appertains exclusively to the judge of the parish of St. Martin, within whose jurisdiction the father of the minor was born, lived, and died.   That both these officers hold their appointment from that judge.   That if either the tutrix or under-tutor has any excuse to

offer for her or his resignation, or against her or his appointment, it must be proposed to the judge who appointed them.

These views of our learned brother are developed much at length, and sustained by several authorities from French commentators, and to a certain extent, and within certain limitations, we are satisfied that the weight of authorities would sustain the Court of Probates, if these questions were to arise in France.

In order not to be misunderstood, we will premise what is the position of the parties now before us, and what is demanded; and then examine the authorities to see what course ought, in our opinion, to be adopted.

The father and mother of the minor died in the parish of St. Martin, and the grandmother became his legal tutrix. She fixed her domicil in New Orleans, which all the authorities agree became the domicil of the minor. So long as the tutrix continues to act as such, so long her domicil is that of the minor. This is too plain to requre a reference to authorities. If the tutrix were to die, the question would arise, whether the domicil of the minor would continue to be here, or whether it would revert, as it were, to the place of his father's death. But that is not now the question. Certain steps are to be taken relative to the administration of the minor's estate, and the question is, which court has jurisdiction, that of the tutrix's and minor's domicil, or that of the last domicil of the deceased parents? The authority of Duranton, to which the judge has referred us, is quite satisfactory on this point. After laying down the general rule, that the convocation of a family meeting is to be made by the judge of the *original* domicil of the minor, and not of the new domicil of the tutor, which he might charge at discretion, he says : " *L'être moral appelé* tutelle *aurait ainsi un domicile qui ne varierait pas. Cependant nous croyons que cette décision serait susceptible de modification pour le cas où ce serait le père, la mère, ou un autre ascendant, qui aurait changé de domicile depuis que la tutelle s'est ouverte en sa personne : dans ce cas, les convocations du conseil de famille pour autorisation et autres objets, devraient avoir lieu devant le juge de paix de son domicile actuel, qui est celui du mineur, autrement ce serait l'obliger à des déplacemens gênans et dispendieux. D'ailleurs il serait très possible, dans ce cas, que le mineur se trouvât avoir*

*moins de parens ou alliés dans le lieu où demeurait l'ascendant lorsque la loi lui a déféré la tutelle, que dans celui où il a son domicile actuel. Ajoutez que à la mort de cet ascendant, la tutelle dative venant à s'ouvrir, c'est bien évidemment à ce nouveau domicile que le conseil de famillc devrait être convoqué, d'après l'article 406, puisque le mineur n'en a pas d'autre."* Cours de Droit François, liv. 1, tit. 10, § 453, vol. 3, p. 447. 3d Paris ed.

This authority is conclusive to show that, even in France, thc *juge de paix* of the domicil of the *legal* tutor, or other ascendant, might act in a case like the present, and that on the decease of the legal tutor, a dative tutor might be appointed at the new domicil of the minor thus acquired, and who, says the author, would have no other. The rule may be different in that country where the tutor is dative, and fixes his domicil at a different place from the domicil of the deceased parents ; and we are free to admit that this seems to be the settled opinion in France, according to the numerous authorities furnished us by the judge. Whether the positive enactments of our Code have not established a different rule, it is perhaps not necessary now to decide as to other cases which may arise ; but it must not be overlooked that the judicial organization, and the condition and habits of the people of the two countries, differ materially. In Louisiana there is a court in each parish, whose peculiar duty it is to watch over and protect the minors within its jurisdiction, to provide them with tutors, and to sce that they administer faithfully. The positive rule established by the Code is, that the domicil of the minor is that of the tutor. In Louisiana there does not exist the same stability in the population. In France the emigration of families from one department to another in hopes of bettering their condition, are supposed to be rare, comparcd with the constant changes which are taking place in this country. But wherever such minors may go, in whatever parish they may settle, they find the same paternal guardianship, exercised it is true, by a different magistrate, but governed by the same laws, and standing equally in relation to them, *in loco parentis*. If the minor has left behind him in the place of his birth most of his relations, he finds, wherever he goes, disinterested friends, capable and willing to advise him and those who administer his estate, and this, too, without the hope, of remote

advantage to themselves. Such advisers will be generally found after all, to be the safest. In a new country where lands are cheap, and marriages fruitful in consequence of the extreme facility of procuring subsistence, large families of children, as they grow up, instead of dividing and sub-dividing their paternal acres, sell out to one or two, and move to some new and remote settlement, where the same process is repeated. The laws of the country adjust themselves to this condition of things, and to the habits and character of the population. But in the present case if the minor had been born in Tours, and the legal tutor had fixed his domicil at Paris after the tutorship devolved upon him, the latter would have been, even by the French law, the domicil of the minor connected with the administration of his estate, and even for the appointment of a successor in the event of the tutor's death. But the judge further answers, that it is not to the Court of Probates for the parish and city of New Orleans, that the under-tutor should apply to be excused from serving, and he relies upon article 325 of the Civil Code, which declares " that all the causes of incapacity, exclusion, and removal of the *tutor*, apply likewise to the under-tutor." But it does not appear to us that this is a question either of incapacity, exclusion, or removal. It seems to us rather as resolving itself into the question, whether one can be compelled to serve as under-tutor ; for he who cannot be compelled to serve, may, at any moment, resign, and we have no doubt that the resignation must be notified to the judge of the domicil of the minor. That part of the Code which treats directly of the appointment of the under-tutor, does not provide that any class of persons shall be compelled to act as such ; and the article above quoted is found in that section of the Code which treats of the *incapacity, exclusion,* or *removal* of tutors, and not in that which treats of the persons who may be *excused* from acting. The office of under-tutor is, essentially, and always dative, and we know of no provision of law which compels any citizen to accept such an appointment, more especially where his domicil is different from that of the minor. We cannot but regard the office in this case as vacant, by the resignation of the under-tutor, signified in a formal manner by petition, and that it is the duty of the Court of Probates to make the appointment.

We take this opportunity to remark that, on this, and on some other occasions, the judges have come in person to answer rules to show cause, and to explain their views orally. We are always disposed to listen respectfully to what may be urged, because we have no object in view but truth; but we consider the practice irregular. The answer should be in writing, filed with the clerk, with such reference to authorities as may appear suitable; and, hereafter, we will not listen to any oral return or discussion, except from the parties interested, or their counsel.

After an attentive consideration of the subject, and the authorities brought to our notice we reach the same conclusion we did in the case of Annette Fortier, 14 La. 478, that it is the duty of the Court of Probates for the parish and city of New Orleans to proceed and appoint an under-tutor.

*Rule made absolute.*