### EDWARD P. CHAMBERLAIN *v.* C. M. CHAMBERLAIN et al.

The principles of law involved in this case were settled in the cases of the *State of Louisiana* v.
*Judge Burmudez*, 14 La. 478; *Same* v. *Same*, 2 Rob. 160; *Same* v. *Same*, 2 Rob. 420; *Succession
of Richard Winn*, 3 Rob. 303; *Butler* v. *Her Creditors*, 6 N. S. 625; *E. Gonsoulin et al.* v. *Sal-
vador Migues et al.*, 5 Ann. 565; C. C. 332.

APPEAL from the Second District Court of New Orleans, *Lea*, J.
*Hunton & Pike*, for plaintiff. *H. D. Ogden*, and *Coxe & Breaux*, for de-
fendants and appellants:

VOORHIES, J.   *William McCawley* was appointed tutor to the plaintiff, *Ed-
ward P. Chamberlain*, by the late Probate Court of the parish of Jefferson.
He was subsequently interdicted as an insane person. After his interdiction
he was removed from the tutorship, at the instance of the under-tutor, by judg-
ment of the Second District Court of New Orleans, the place of his domicil.
The defendant, *C. M. Chamberlain*, was thereupon appointed tutor by the same
court to fill the vacancy. *McCawley* through his curator, *William E. Leverich*,
on rendering an account of his tutorship and delivering over to his successor
the estate of his ward, was fully discharged and his official bond cancelled.

The present suit was brought to compel *C. M. Chamberlain* to render an ac-
count of his tutorship, in which the plaintiff also asserted his right of mort-
gage on certain property held by the other defendants as third possessors.

Two of the third possessors have taken an appeal from the judgment rendered by the court below in favor of the plaintiff.

The action is resisted by them on the ground, that the Second District Court of New Orleans was without jurisdiction, *ratione materiae*, to remove *McCawley* from the tutorship, the succession of the minor's father having been opened in the parish of Jefferson, where the appointment was made; and that the proceedings relating to the appointment of *Chamberlain*, were consequently null and void and could produce no legal effect. It is also contended by them, that *Chamberlain* could not be considered as tutor, even conceding the jurisdiction assumed by the court, inasmuch as he had failed to furnish the requisite bond and security.

We think the questions involved in both propositions may be considered as settled in our jurisprudence. See 14 La. 478; 2 Rob. 160 and 420; 3 Rob. 303; 5 N. S. 625; 5 Ann. 565.

In relation to the right of subrogation in favor of the third possessors, resulting from the payment of certain claims secured by privilege or mortgage, having priority over that of the plaintiff, it is clear, as held by the Judge *a quo*, that such claims must be allowed and paid by preference out of the proceeds of the sale of the property thus mortgaged.

It is therefore ordered, adjudged and decreed, that the judgment of the court below be affirmed, with costs.

*C. Roselius*, one of the third possessors and appellant in the case, on application for a re-hearing, argued as follows:

That he had not advanced the proposition, "*that Chamberlain could not be considered as tutor, inasmuch as he had failed to furnish the requisite bond and security.*" What he contended for was that the payment made by *Leverich* to *Chamberlain*, before the latter had furnished his bond and security, was not a valid payment; and that, therefore, when he became of age, his money was still in the hands of *Leverich*. It would not be denied by any one, that if the plaintiff had sued *Leverich*, he would have been entitled to recover; indeed, it was difficult to imagine what defence could have been made to such an action. The pretended payment to *Chamberlain* would have afforded no ground of defence. When he bought the property of *Chamberlain*, it is obvious that the plaintiff's money was still due by *Leverich*, as the curator of the interdicted *McCawley*; and the question to be determined by the court is whether the plaintiff could, after he attained the age of majority, by ratifying the illegal payment made by *Leverich* to his brother, subject his property, purchased previously in good faith, to the operation of a tacit mortgage in favor of minors? It is not intimated that *Leverich* is not perfectly solvent, so that the claim of the plaintiff against him was unquestionably good and available. Under this state of facts, it is humbly submitted that if a loss is to fall on one of two innocent persons, it must be borne by him who was most in fault. It can certainly not be said that he committed any negligence or fault in buying the property; but *Leverich* was guilty of a gross error in paying to a person who had no authority to receive payment. It may be said that the plaintiff has no longer any recourse against *Leverich*, but it is clear, that if he has lost that recourse, it is by his own act, in bringing the present action against him, which is a tacit ratification of the payment to his brother. Who is to bear the consequences of that act?

No doubt, the tutor cannot take advantage of his neglect to furnish the bond and security required by law; such a pretension would be preposterous in the extreme; no one can take advantage of his own wrong. This is all that was decided in the cases of *Butler* v. *Her Creditors*, 5 N. S. 625, and in that of *F. Gonsoulin et al.* v. *Salvador Migues et al.*, 5 Ann. 565.

As to the question whether a payment made to a tutor who has not given security is valid or not, it is free from all difficulty: the law is express in its provisions on this point. C. C. 332. Judge Mathews, as the organ of the court in the case of *Verret et al.* v. *Aubert*, 6 La. 354 *et seq.*, says:

CHAMBERLAIN
v.
CHAMBERLAIN.

"Tutors are bound by law to obtain the confirmation of their appointments by the Judges of probates; to take an oath faithfully to discharge their duties, and to give security. The only exception, with regard to any of these requisites, has relation to tutors by nature, and no others.

"Until a tutor complies with them, however he may render himself responsible for damages on account of an interference, or intermeddling in a succession, he can do nothing binding and conclusive on the rights of minors whom he represents. Now, as it is not shown that *Godfroi Verret* was either confirmed in his office of tutor, took the oath prescribed by law, or gave security, the payment was made to him through error on the part of the defendant, and he is still liable to pay to the plaintiffs the amount of their portion of their grandmother's estate."

This decision has never been overruled, and no one will undertake to question its correctness.

The position assumed in argument that the intermeddling in a minor's property, produced the same legal mortgage on the property of the intermeddler as that which attached to the property of the tutor, can be of no avail to the present plaintiff; *first*, because he does not place his right to subject the property to that mortgage on any such ground; but expressly and exclusively on the foundation that *Charles M. Chamberlain* was his tutor; and in the *second place*, it is certain that if he had alleged, that the payment by *Leverich* to *C. M. Chamberlain* was illegal and constituted an act of intermeddling on the part of the latter, is it not clear that on paying the debt, he, the appellant, would have been subrogated to his claim against *Leverich?* But, instead of pursuing this course, he has, by the institution of the present action, released all recourse against *Leverich*, and seeks to throw the loss on the appellant. He waits until his brother and pretended tutor has sold all his property, and absconded to California, then he commences these proceedings under the facts and circumstances disclosed by this record.

Re-hearing refused.