## Succession of Frederick Gorrisson.

A judgment appointing a tutor to a minor, rendered by a court of competent jurisdiction, cannot be attacked collaterly by a debtor of the minor ; so long as the judgment stands unreversed, it constitutes a full warrant for the demand and collection of the debts due the minor, by the person named therein as tutor.

Such a judgment cannot be attacked, directly or collaterly, before any other court, than the one by which it was rendered.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *Elmore & King*, for appellant.  *T. Gilmore*, for appellee.

BUCHANAN, J.  *F. A. A. Heisen*, tutor of the minor, *Catharine Bollenhagen*, under the appointment of the District Court of the Parish of Caldwell, took a rule upon the executor of *Frederick Gorrisson*, whose succession is opened in the parish of Orleans, (the said minor being a legatee and creditor of said *Gorrisson*,) for an account of administration, and for payment of the legacy bequeathed by *Gorrisson's* will to the said minor.

The executor defends the rule on the ground, that the District Court of Caldwell was without jurisdiction to appoint a tutor to the minor, *Bollenhagen, ratione personæ*, the domicil of said minor not being in the said parish ; and that the appointment of the mover in the rule, as tutor of the said minor, was null and void, by reason of such want of jurisdiction.

On trial, the rule was modified by consent of parties, as follows :

"It is understood that that part of the rule which calls for an account, is not insisted on, as the succession is not in a condition to enable the executor to file an account at present, and that five hundred dollars would be sufficient at this time to pay the bills due for the education and expenses of the minor ; which said amount is insisted on being paid by the executor to meet the wants of the minor."

It was admitted that the plaintiff in rule was appointed tutor, as alleged in the rule ; that *Catharine Bollenhagen* is without means for her support, and is in need of some of the money due from the estate of *Gorrisson*, to pay for her maintenance ; that the estate of *Gorrisson* is indebted to her in the sum of three thousand eight hundred dollars, as well as can be ascertained at this time, as tutor of the minor, *Catharine Bollenhagen ;* and that also, by the last will of said *Gorrisson*, he bequeathed to her the sum of five hundred dollars, the family pictures and jewelry.

There is a bill of exceptions taken by the plaintiff in rule, to the admission by the court, of evidence offered by the defendant, to prove that the appointment of the plaintiff, *Heisen*, as tutor to the minor, *Catharine Bollenhagen*, was null and void for want of jurisdiction, and did not authorize proceedings herein against the executor.

The court erred in admitting this proof.  The appointment of a tutor to this minor, was a judgment of a court of competent jurisdiction *ratione materiæ*, which could not thus be collaterally drawn into question by a debtor of the minor.  So long as that judgment stands unreversed, it constitutes a full warrant for the demand and collection by the person therein named as tutor, of debts due to the minor, *Bollenhagen*.

SUCCESSION OF
GORRISSON.

The Second District Court of New Orleans is without jurisdiction, to decree the nullity of a judgment rendered by the District Court of the Eleventh District, holding sessions in the parish of Caldwell, in a direct action ; still less can it do so collaterally. 1 Hennen's Digest, 811 ; 3 Robinson 305 ; 14 An. Rep. 625.

It is, therefore, adjudged and decreed, that the judgment appealed from be reversed, and that plaintiff in rule and appellant, have judgment against defendant and appellee, in his capacity of executor, for five hundred dollars, with costs in both courts.

LAND, J., concurring. It is true that the domicil of the tutor, so long as he continues to act as such, is the domicil of the minor. It is also true, under the decisions of this court, that the Judge of the parish of the tutor's domicil, has jurisdiction as to all matters touching the administration of the minor's property, or affecting his interest during the continuance of the tutorship. But these principals of law are not necessarily decisive of the question now before the court and which is, in my understanding of the cases, still an unsettled and open question.

There is no express law which makes the tutor's domicil, the minor's domicil, *after the death of the tutor*. But there is an *express law* which makes the *last place of domicil* of the father and mother, the domicil of the minor, for the purpose of the appointment of a tutor to the minor, and *that is the domicil of the minor* mentioned and intended in Article 289 of the Civil Code, as clearly shown by Article 945 of the Code of Practice.

If the domicil of the minor continues by operation, or presumption of law, to be that of the last place of residence of his *deceased tutor*, until another be appointed, then the enactment of Article 945 of the Code of Practice, was entirely unnecessary, because the last place of domicil of the *deceased* father and mother continued by operation of law, to be that of their minor children, without any express legislation on the subject.

The Legislature, however, seems to have rejected such presumption, and to have acted on the principle, that the minor has no place of domicil after the death of his tutor, and before the the appointment of another in his stead, and consequently, has provided for such a case, by declaring that the last place of domicil of the deceased father and mother in the State, shall be the minor's domicil for the purpose of the appointment of a tutor.

For these reasons, I concur in the decree in this case.

NOTE.—The case of the *Succession of Winn*, 3 Rob., was properly decided under Article 944 of the Code of Practice, because the parish of Carrol was the domicil of the surviving mother.

MERRICK, C. J., dissenting. This case presents a question of law resulting from the admissions of record, which I think of much importance.

It is admitted that the mother of the minor, *Catharine Bollenhagen*, died in the parish of Caldwell, in this State ; that her succession was opened in said parish, and *Frederick Gorrisson*, the maternal uncle, was appointed tutor on the 15th day of March, 1851 ; that in the following year, said *Gorisson* carried said minor to Germany for her education, where she has been ever since ; that at the date of the appointment of said *Gorrisson* as tutor, his domicil was in this parish, the parish of Orleans, where it continued till his death.

*F. A. A. Heisen* was appointed tutor by the Clerk of the parish of Caldwell, in January, 1859, after the death of *F. Gorrisson*.

The question is, therefore, presented, whether the court of Caldwell had *juris-diction*. If it had, the appointment cannot be questioned collaterally; if it had not, the appointment is absolutely null and void, and must be so considered everywhere.

The question would, I think, be without difficulty on legal principles, were it not for the *argumentum ab inconvenienti*. For it might happen that a succession should be settled, or the affairs of a minor be administered, in good faith, by a court erroneously believing itself to have jurisdiction; and to hold that the acts of such court were absolutely null and void, might work great hardship to innocent persons. The argument, however, may be met by others of equal potency the other way.

But in the present case, the only inconvenience resulting from the irregular appointment of *Heisen*, is the want of money which the minor may experience during this controversy, and which any friend might safely furnish.

It is shown that the minor was in Europe at the time of her appointment, and that her domicil (being that of the tutor) was in New Orleans.

Hence, the appointment by the Clerk of Caldwell can only take effect, by showing that the court of that parish had jurisdiction (as assumed by the majority of this court) *ratione materiæ*, in other words, by reason of the subject-matter. This question can only be decided by an appeal to the law; for it cannot for a moment be admitted, that a court other than that at the domicil of the parties, can, in the absence of positive law, take jurisdiction *ex parte* and affect the rights and estates of any one without notice.

Now, the law on this subject is found in Art. 289 of the Civil Code, which declares that :

" The appointment or confirmation of tutors must be made *by the Judge of the parish where the minor has his domicil, if he has a domicil in the State, or if he has no domicil in the State*, by the Judge of the parish *where the principal estate of the minor is situated*, saving to the parties the right of an appeal within thirty days from the judgment decreeing the nomination or confirmation, after which no appeal shall be permitted." See also C. P. 944, 945, 956 and 948.

The domicil of the minor is that of the tutor, as expressly declared by Art. 48 C. C. Hence the domicil of this minor is New Orleans, and the Code of Practice confers upon the competent Judge alone the power to appoint tutors C. P. 948.

It is, therefore, clear that the Judge of the Second District Court of New Orleans alone, has jurisdiction over this question, and we are called upon to reverse his judgment, wherein he has refused to send the estate of the minor under his jurisdiction out of the same, or to place it in the keeping of a person appointed by the Clerk of a court having no jurisdiction conferred by law.

In the case of the *State* v. *Bermudez*, it was held, that the Judge who made the appointment of a minor, lost jurisdiction over him, if his domicil were in another parish, and that the Judge of the domicil of the tutor was the proper Judge to appoint the under-tutor. 14 La. 484. If so, he is the proper Judge to appoint the tutor. C. C. 300.

In 2 Rob. 160, against the same Judge, it was held, that the domicil of the tutor is that of the minor; and that the Court of Probates where the minor has his domicil, is the proper tribunal to order a family meeting, to determine questions affecting the interest of minors.

In the case of the State against the same Judge, 2 Rob. 418, it was held, that

it was the Judge of the domicil of the tutor, who had jurisdiction to receive the resignation and make appointment of the under-tutor.

In the case of the *Succession of Winn,* it was expressly decided, that it was the Judge of the domicil of the mother and tutrix, who had the right to make the appointment of his successor.

As this case is directly in point, I will briefly state the facts as they appear by the reports.

*Richard Winn* died in the parish of RAPIDES, where his succession was opened in 1840, leaving three minor children. His widow, their mother, was confirmed natural tutrix in 1841, by the probate Judge of Rapides. While on a visit to Tennessee, the tutrix married *J. N. P. Richardson,* who resided at that time in the parish of CARROLL, in this State. The marriage, without the advice of a family meeting, having deprived the tutrix of her office, she and her husband applied to the Judge of Probates of the parish of Carroll, the new domicil, to be appointed dative tutors. With the advice of a family meeting, they were so appointed. The same month in which they were appointed in the parish of *Carroll,* the grandfather of the minors applied to the Probate Court of *Rapides,* for the convocation of a family meeting, and, notwithstanding the opposition of *Richardson and wife,* was appointed tutor. *Richardson and wife* appealed.

The point was expressly made by the counsel of the grandfather, the tutor appointed in Rapides, that the Probate Court of the parish of Carroll had no jurisdiction.

It also appears from the appellant's points, that the regularity of the probate proceedings of Carroll was questioned. On the first point, this court said :

" By the 48th Article of the Civil Code, it is enacted that a married woman has no other domicil than that of her husband ; and the domicil of minors is that of their father, mother or tutor ; therefore, when the opponent, the widow of *R. Winn,* deceased, became the wife of *Richardson,* she acquired immediately, by fact of marriage, the domicil of her second husband, which was in the parish of Carroll ; and her minor children, whose domicil is that of the mother, acquired also their domicil in the same parish. The fact which, perhaps, deprived her of the natural tutorship, had the immediate effect of transferring the domicil of the mother and children from the parish of Rapides to that of Carroll. Now the law is positive in all cases concerning minors, the Judge referred to in our legislation, is *the Judge of the parish within whose jurisdiction the minors reside.* Bullard & Curry's Dig. p. 580, No. 8 ; C. C. Art. 289.

" The Code of Practice," the court proceeds, " says that the appointment of a tutor or curator to a minor, belongs to the Judge of Probates of the place of domicil or usual residence of the father and mother of such minor, if they or either of them be living. This point is, in our opinion, so clear, that it does not require any further comment, particularly as it seems to have been settled in our jurisprudence by several decisions of this court. See 14 La. 484, and the case of the *State* v. *The Judge of the Court of Probates of New Orleans,* 2 Rob. 160, 418."

Now, here it has been expressly decided, that the domicil of the minor followed that of the tutor ; that the Judge who made the first appointment lost his jurisdiction by the removal of the tutrix and mother of the minors to another parish, and that the Judge of that other parish became seized of the jurisdiction.

It is supposed, that this decision does not apply to the case where both the

father and mother of the minors are dead, and a second tutor is to be appointed, and that in that event, under Article 945 C. P., the last place of residence of the survivor is the perpetual jurisdiction for the successive appointment of all tutors. Now, in the case just cited, this court affirms the contrary doctrine as settled law, and refers to 14 La. 484, and 2 Rob. 160, 418, in support of the same.

Moreover, the Article in question must be construed with reference to the other provisions of the Code, and particularly Articles 48 and 289, and in such connection, it is quite evident, it only applies to the *first appointment of tutor*. It cannot be supposed that the Legislature, after having declared that the domicil of the tutor is that of the minor, intended that he should lose all his rights of citizenship in that parish, and be referred to the ancient domicil by the death of his tutor.

Again : in the case of the *Succession of Bronson*, we held, that an appointment of a tutor by the District Court of the parish of Jefferson, was null, the domicil of the minor being the parish of Plaquemines, where the Clerk had exercised jurisdiction. 11 An. 24.

We have also held, that we will not regard the appointment of a tutor made in a sister State, the domicil of the minor being here. See also the case of *The State ex rel. Boissac* v. *A. Petit, Recorder*, 14 An.; Opinion Book, 241, 242.

It, therefore, cannot be affirmed, that any statute or provision of the Code, has given the Clerk of the parish of Caldwell, or the Judge of the Eleventh District, continued jurisdiction of the appointment of tutors to said minor. No statute, therefore, has given such Clerk or Judge jurisdiction *ratione materiæ*, or by reason of the subject-matter.

But if it be supposed, that inasmuch as the District Courts are courts of general jurisdiction, and, therefore, the courts of other districts than those of the domicil may appoint tutors, the supposition embraces a falacy, for the jurisdiction of District Courts is limited by the boundaries of the parish, and there are only two modes in which any court, how extensive soever its powers may be, can take jurisdiction, viz, by reason of *the person or property* which it can reach by its process. See 5 N. S. 45.

The court of Caldwell has no jurisdiction of property, because that appears to be within the jurisdiction of the Second District Court, and if it were not, the laws regulating the appointment of the tutor, is a personal statute, and governs the correlative rights of the minor and tutor throughout the world. 8 La. 84; 8 Saugry, sec. 380, C.

Vattel says : " It belongs to the domestic Judge to nominate tutors and guardians for minors and idiots. The law of nations which has an eye to common advantage and the good harmony of nations, requires, therefore, that such nomination of tutor or guardian, be valid and acknowledged in all countries, where the pupil may have any concerns." Vattel's Law of Nations, p. 227, book 2, ch. 7, sec. 85 ; Story's Conflict of Laws, secs. 495-7 ; see also Statute of April 1, 1843.

The statute being personal, the court of Caldwell was without jurisdiction, because both the minor and her domicil were beyond the limits of that district. It is thus shown that the Clerk of Caldwell and District Court had no jurisdiction in this case, and it is well settled that the decrees of a court without jurisdiction, are absolutely null and void, and have no validity whatever. 1 N. S. 9 ; 2 Rob. 512 ; 11 How. 460.

In the case of *Winn* the court said, that the appointment by the Judge of Rapides was void for want of jurisdiction. See 3 Bouvier Inst. section 2901, page 248.

In the case cited from 14 An. 623, the court had jurisdiction.

In the case of *Broughton* v. *King*, this court said : " Laws authorising judgments *in personam* to be rendered against absentees, without citation, notice or appearance, in direct actions nominally instituted against them, are subversive of all ideas of justice and common right." 2 An. 571.

What is here said of an attachment suit, will apply with still greater force to a case where a minor and her estates are sought to be withdrawn by an *ex parte* order of a remote tribunal, from the jurisdiction to which they have been confided by law. If the Clerk of Caldwell can make such appointment in the absence of the minor and her property, then every other Clerk has the same power, and nothing prevents the appointment of as many tutors as there are parishes in the State. Nay more, as many as there are probate jurisdictions in the Union, for judgments have the same force, under the Constitution, in every other State which they have at home.

But it is said that this court has decided, 3 Rob. 305, *Succession of Winn*, that the judgment of the Probate Court appointing a tutor, cannot be questioned collaterally.

I have already had occasion to cite this opinion to show, that it was only the court of the domicil of the tutor which could appoint his successor. The court, after having demonstrated that the parish of Carroll *had jurisdiction* to make the appointment, decided that the appointment made by such court could not be attacked collaterally. Why ? I add, because the court *had jurisdiction*, and the same can be said of all the other cases cited by appellant.

In the case of *Brownson*, we held, in fact, that where the court had no jurisdiction, the appointment could not be regarded. 11 An. 25.

A court of general jurisdiction within one parish, cannot, therefore, be said to have jurisdiction *ratione materiæ* of property and persons beyond its limits, and wholly within the jurisdiction of another tribunal, because the property and person cannot be reached without invading such other jurisdiction.

I see nothing in Article 945 C. P., which induces me to think that the Legislature wished to sanction the doctrine, that the minor has no place of domicil after the death of his tutor. They have not said so, and it is not only against anology but, as I think, against the express letter of Articles 48 and 289 C. C. See also Art. 43.

There is no difficulty in construing the different Articles of the Civil Code and Code of Practice, so that they shall harmonize. It has already been done by our predecessors, who, I had supposed, had settled this question long since.

I think, the judgment of the lower court ought to be affirmed.