209 So.2d 182 (1968)
Thelma Benton ROBY
v.
Arthur LEONARD et ux.
No. 7302.
Court of Appeal of Louisiana, First Circuit.
April 8, 1968.
Robert E. Palmer, of Palmer & Palmer, Amite, for appellant.
Edwin C. Schilling, Jr., of Schilling & Simpson, Amite, for appellees.
*183 Before LOTTINGER, ELLIS, and CUTRER, JJ.
LOTTINGER, Judge.
The plaintiff, Thelma Benton Roby, appearing in her alleged capacity as tutrix of the minor children, Sharon Cecile Williams and Prince Williams, filed this suit on January 3, 1963, alleging that the defendants, Arthur Leonard and his wife, Theresa Buckley Leonard, had wrongfully taken the life of one, Lolitha Williams, mother of Sharon and Prince Williams. To this petition, the defendants on January 21, 1963, filed an exception of vagueness and also an exception to procedural capacity. As to the exception to procedural capacity, the defendants alleged that there was no inventory or appraisal made of the minors' estate as required by LSA-C.C.P. Art. 4101, nor was any sworn descriptive list of property filed in lieu of an inventory as provided for by LSA-C.C.P. Art. 4462.
This suit had been originally and initially assigned to Division "A" of the Twenty-First Judicial District Court, but when the exceptions came up for trial on June 14, 1963, Division "B" tried the exceptions, and the plaintiff participated in the trial of the exceptions in Division "B" without objection. In the trial of the exceptions, the Trial Judge found in favor of the defendant in both cases, and allowed the plaintiff sixty days within which to amend his petition to cure the exception of vagueness and to file tutorship proceedings supplying an inventory and appraisal or in lieu thereof a sworn descriptive list of the minors' property.
The defendant on May 18, 1967, filed a motion suggesting to the Court that the plaintiff had not complied with the Order of the Court of June 14, 1963, allowing him sixty days within which to cure the defects as pointed out by the exceptions of vagueness and lack of procedural capacity and requested of the Court that it issue to the plaintiff a show cause order as to why the plaintiff's petition should not be dismissed at plaintiff's cost. The motion to show cause as to why the petition should not be dismissed came to trial on June 9, 1967, and the Trial Judge after hearing all of the evidence found in favor of the defendant and made the rule absolute dismissing the plaintiff's petition at the plaintiff's cost. From this judgment the plaintiff has perfected this appeal.
When the rule to show cause came up for trial on June 9, 1967, the plaintiff strongly objected to Division "B" hearing this rule inasmuch as the case had been originally allotted to Division "A" and no transfer of divisions had officially taken place. There is no question but that this suit was assigned to Division "A" and no transfer order transferring the case from Division "A" to Division "B" was ever signed, but we feel as did the Trial Judge that when the exceptions were first heard by Division "B" and the plaintiff did not object to Division "B" hearing the exceptions, he waived any objections which he may have had thereto. Since it was Division "B" that heard the exceptions, and since it was Division "B" that ordered and allowed the plaintiff sixty days within which to cure the defects, it must necessarily follow as the night the day that on a rule to show cause why the suit should not be dismissed for a failure to follow the order of Division "B", Division "B" should certainly hear this rule. We therefore can find no error on the part of Division "B" in hearing this particular rule.
The plaintiff next attempted on the trial of this rule to show that the defense counsel had agreed with him to allow plaintiff's counsel as much time beyond the sixty day period as he would need to cure the defects of his petition. This alleged agreement between the opposing attorneys was never reduced to writing and therefore, the only evidence that could be produced was the testimony of the attorneys and their law partners involved and their recollection of what had transpired. We have no doubt that perhaps there was some sort of agreement or at least some sort of a discussion whereby the *184 defense would have allowed the plaintiff more than the sixty days required, but we cannot conceive that the defense attorneys agreed or would have agreed to such an extended length of time.
Be that as it may, counsel for plaintiff in his argument to the Trial Court on the hearing of the rule to show cause, stated that he had attempted to file an "amended and supplemental petition" clarifying the defects pointed out by the exception of vagueness. This attempt to file was prior to the date on which defendant asked for the rule to show cause. It seems that the plaintiff had incorporated in his amending and supplemental petition a request for a jury trial, and had attached thereto an order authorizing a jury trial, which order was to be signed by a local judge. But, the plaintiff had failed to get this order signed. When plaintiff deposited with the clerk of court his amending and supplemental petition, the clerk of court acting under an understanding with the local district judges, i. e. not to file any motions, etc., which needed signatures of judges, and the signature was missing, did not mark the petition as having been filed, but rather returned same to plaintiff's counsel through the mails. As we have above stated, this all transpired prior to May 18, 1967, the date on which plaintiff filed its show cause motion.
LSA-C.C.P. Art. 253 provides:
"All pleadings or documents to be filed in an action or proceeding instituted or pending in a court, and all exhibits introduced in evidence, shall be delivered to the clerk of court for such purpose. The clerk shall endorse thereon the fact and date of filing, and shall retain possession thereof for inclusion in the record, or in the files of his office, as required by law." (Emphasis ours.)
This provision was first placed in our procedural law with the enactment of the Code of Civil Procedure. It is our understanding of this code article, that all that would be required of a party litigant who wishes to file a pleading in a pending action is to deliver the pleading to the clerk of court or to an appropriate individual in his office. We do not feel under LSA-C.C.P. Art. 253 that it is incumbent upon the litigant to be certain that the pleading has been marked as having been filed. Therefore, we are of the opinion that merely because the amending and supplemental petition was not stamped "Filed", does not mean that it was not technically filed. The fact that the court order attached to the petition was not signed can have no effect on the contents of the petition which did not relate to the request for a jury trial. The request for the jury trial and the court order would therefore be ineffectual. Consequently, we are of the opinion that the plaintiff did file an amending petition prior to the motion for the show cause order. Assuming for the sake of argument that an attorney for a petitioner had delivered a petition in a tort case to the clerk of court for filing on the last day before prescription and the clerk either failed or refused to stamp same "Filed", would you say then that the petition has or has not been filed timely? We are of the opinion that the petition under those circumstances would be considered filed, just like in the case at bar.
It is certainly true that the plaintiff filed his amended petition long after the sixty days granted him by the Trial Court for amendment had expired, but he did file his amended petition prior to the motion for a show cause, and under Interstate Electric Co. v. Interstate Electric Co., 6 So.2d 39, La.App.2d Cir. (1942), the defendant waived the right to have plaintiff's suit dismissed for failure to comply with the court order. In Interstate Electric, at page 40, et seq., the Court stated:
"This ruling, sustaining the exception of vagueness and ordering the petition amended within the stated time, did not include the penalty of dismissal for failure to comply with it. The inclusion of such a penalty was within the sound discretion of the court. There may have *185 been a reason for not including it or it may have been an oversight. In our opinion, the penalty of dismissal cannot be implied and defendant could not have secured a judgment of dismissal at the expiration of the delay granted by the court to amend without first filing a motion to dismiss based upon the failure of plaintiff to comply with the order and on trial of the motion, if plaintiff could have shown by legal testimony good and sound reasons for his failure, the court could and should have granted further delay. On the other hand, if the order had contained the penalty of dismissal upon failure to comply with it and plaintiff made no effort to secure an extension of time prior to the expiration date of the order, defendant without motion could have secured judgment dismissing plaintiff's suit. In our opinion, this is the distinction between the two kinds of order.
"A judgment of dismissal in such an instance is based upon laches or presumed abandonment of its claim by plaintiff. But in the case at bar plaintiff's suit could not be dismissed before hearing on a motion to dismiss and if it had good, sound legal grounds for not furnishing the information ordered furnished by the court within the delay granted, it did not have to take any action until an attempt to dismiss his suit was made by defendant and if defendant was not actively pushing its advantage under the court's ruling or was guilty of laches itself in failing to urge its right, we fail to see how or why plaintiff should be condemned for its laches.
"Since defendant took no action of any kind until eleven or twelve days after plaintiff had complied with the order to amend, although nearly four years after the expiration of the time granted by the court, we are of the opinion that defendant's motion came too late and by failing to file its motion to dismiss before the amended petition was filed, it waived its right to have plaintiff's suit dismissed for failure to comply with the order of court."
It is also true in the instant case that the judgment ordering the amendment within sixty days did not provide for a dismissal for a failure to comply with the court order.
The defendant further contends that the plaintiff has not met the second requirement of the court order in that he did not cure the defects of the tutorship proceeding as pointed out by the exception of lack of procedural capacity. The rule is well settled in this state that there can be no collateral attack made on the tutorship proceeding or the validity thereof. In Robinson v. Scharfenstein & Son, 148 La. 364, 86 So. 915 (1921), a case most similar to the instant proceeding, the tutor sued for injuries suffered by the minor. The defendant filed an exception of procedural capacity. The Supreme Court stated:
"Nothing is better settled than that the appointment of a tutor cannot be attacked collaterally. Leckie v. Fenner, 9 Rob. 189; Stewart's Curator v. Row, 10 La. 530; Succession of Gorrisson, 15 La.Ann. 27; Martin v. Jones, 12 La.Ann. 168; Succession of Hawkins, 35 La.Ann. 591; Succession of Haley, 49 La.Ann. 713, 22 South. 251.
"In the first three of the cases here cited the ground of attack was that the appointment of the tutor had been made by a court other than that of the domicile of the minor, and therefore by a court without jurisdictionabout as serious a ground of nullity as could well be thought of.
"Learned counsel say that the attack in this case is direct, not collateral. It is collateral, since the regularity of plaintiff's appointment comes up only as an incidental or collateral issue.
"In 15 R.C.L. p. 838, the definition of a collateral attack is given as follows:
`A collateral attack upon a judgment has been defined to mean any proceeding in which the integrity of a judgment is challenged, except those made *186 in the action wherein the judgment is rendered or by appeal, and except suits brought to obtain decrees declaring judgments to be void ab initio.'
"And what constitutes a collateral attack is stated in 23 Cyc. 1062, to be as follows:
`The term "collateral" as used in this connection is opposed to "direct". If an action or proceeding is brought for the very purpose of impeaching or overturning the judgment, it is a direct attack upon it. Such is a motion or other proceeding to vacate, annul, cancel, or set aside the judgment, or any proceeding to review it in an appellate court, whether by appeal, error, or certiorari, or a bill of review, or, under some circumstances, an action to quiet title. On the other hand, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral. This is the case where the proceeding is founded directly upon the judgment in question, or upon any of its incidents or consequences as a judgment, or where the judgment forms a part of plaintiff's title or of the evidence by which his claim is supported.'"
Therefore, for the above and foregoing reasons, the judgment of the Lower Court dismissing the plaintiff's suit is now reversed, and this suit is remanded to the Trial Court to be proceeded with in accordance with law. The costs of this appeal are to be paid for by the defendant-appellee, and all other costs are to await the final determination of this case.
Judgment reversed and remanded.