No. 9472.

THE STATE EX REL. P. J. MARTIN VS. H. L. LAZARUS, JUDGE OF CIVIL
DISTRICT COURT FOR PARISH OF ORLEANS, DIVISION E.

1. The failure of a district judge to decide a cause within five months after its submission, amounts to a denial of justice.

2. A *mandamus* will issue in such a case, to coerce a decision of the suit.

3. The delay is unreasonable and furnishes good cause of complaint.

APPLICATION for Mandamus.

*Thos. J. Semmes* for the Relator.

Respondent Judge *in propria persona.*

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an application for a *mandamus* to coerce the decision of a cause on its merits.

The complaint is that, though the case was tried, argued and submitted two years ago and though the district judge has been often requested and has frequently promised to pass upon the same, no decision has, as yet, been rendered and that the delay thus occasioned amounts to a refusal to determine the controversy, and that this is a denial of justice.

The relator avers that although the facts involved may be numerous and complicated, yet the questions of law presented are few and simple; that the parties have, with a view to assist the judge in his examination and determination of the matters presented, in the year 1883 and in the beginning of 1884, submitted elaborate printed briefs containing references to the most important portions of the testimony.

He urges that he is seventy-seven years of age and fears that death will overtake him, before the cause is decided, if the future may be judged of by the past; that his death may seriously affect the vigorous prosecution of the cause and that he believes that it is important to his interests that the same be promptly decided.

The district judge, in elaborate return, represents the case as one of great complication and difficulty, requiring unusual consideration for determination. He says that the suit was brought in 1874, that it passed from one court to another, by operation of law; that the accounts involved were referred for investigation and report to experts and to an umpire; that the parties litigant disagreed; that the record is immense and that the whole responsibility of determining the issues

presented rests on him; that the cause was not actually submitted until November, 1884, since when he has diligently applied himself to the examination and study of the accounts, testimony and reports in the case; that there are grave and important legal propositions involved which counsel for plaintiff did not discuss and in which they have, in no manner, aided the court by reference to authorities; that he has used every effort and made every endeavor to reach a prompt decision in the cause; that he was in the active preparation of his opinion in the case; and, without stating now within what time specifically the cause is to be decided, respondent informs this Court that a decision will be rendered before the close of the present term, which means July 3d, next.

The district judge charges that the statement in relator's petition, that the delay operates a denial of justice is malicious, false and untrue and that whatever delay is incident to a prompt decision of this cause, results from the plaintiff's action.

The case is strongly presented by both the relator and the respondent; but there can be no doubt that, under the law and under the showing of the district judge, the complaint is not without just foundation.

The right of this Court, in a proper case, to issue the writ cannot be questioned.

The Code of Practice is explicit to the effect, that the writ issues when the judges of inferior courts are guilty of a denial of justice, "or of *unreasonable* delay in pronouncing judgment on causes before them." C. P. 838.

Up to recently it was not so easy to determine what the Code meant by "unreasonable delay, but the last legislature appears to have construed it to signify thirty days. V. Act 72, p. 94 of 1884.

Whatever be the standpoint from which, either article C. P. 838 or the Act of 1884 or both, be considered, it is clear that the district judge has had more than ample time to investigate the case and to render a conscientious judgment in it.

From the return made, it appears that the cause was submitted at least in November, 1884, if not before, that is, upwards of five months, or a period exceeding four times the delay within which the act of 1884 designs cases to be determined.

It is apparent that, had this cause been tried and argued before and submitted to a special jury two years ago, when the oral argument in it was closed, it would, long ago, have been disposed of.

The relator has presented a clear *bona fide* case in point of fact, in which it appears that the respondent has failed to comply with a *duty* unequivocally imposed upon him by law.

Under the circumstances, we are left no discretion and must allow the relief sought.

It is, therefore, ordered and decreed, that the alternative *mandamus* issued be made peremptory and that the respondent be commanded to decide the cause, described in the petition without further delay.

### CONCURRING OPINION.

POCHÉ, J.  In addition to the reasons contained in the opinion prepared by the Chief Justice, I think that the following considerations have a strong bearing in favor of the conclusions reached and announced herein.

It is admitted that the cause of the relator has been under submission at least since January, 1884, and that it had been preceded by a full hearing of the evidence and exhaustive oral argument by counsel of both sides.  The judge, who had all the evidence before him, was not compelled to postpone his examination of the case until counsel had filed briefs.

But the respondent judge says in his answer that he has reached a conclusion in the case, and that he is engaged in the preparation of his opinion therein.  Hence, there is no force in the suggestion that under the effect of our mandamus, his judicial discretion may be jeopardized, or that he may thereby be compelled to decide the case at haphazard.  While the exercise of the remedial and supervisory powers vested by law in this Court may and does often act as coercive on the judicial functions of judges of inferior tribunals, it is not true in law or in fact that the exercise of these powers has a tendency to abridge or impair the dignity of judges who are compelled by law to obey the mandates of their superiors, under the constitution and the laws of the State.

This feature of jurisprudence is not absolutely novel, and its application must create no alarm to the present members of the judiciary. In the case of Life Ins. Co. vs. Adams, 9 Peters 605, C. J. Marshall said: "Though the Supreme Court will not order an inferior tribunal to render judgment for or against either party, it will, in a proper case, order such court to proceed to judgment." The same views have prevailed in our court.  State vs. Judge, 14 La. 483; State vs. Judge, 4 Rob. 51.

State ex rel. Martin vs. Judge.

The relative position and the respective authority of the different courts created under the constitution have been fully considered by the law-maker, who contemplates perfect harmony in the system, and who expects that the inferior shall obey the lawful mandates of the superior. Constitution, art. 90.

Under the provisions of the law applying thereto, and under the issue presented by the pleadings, the plain and sole duty of this Court was to ascertain the nature of relator's complaint and to grant the remedy provided by law, without reference to ulterior consequences. It will be time to consider these when relator complains of the unjustifiable disobedience of the respondent, if such be ever the case.

## DISSENTING OPINION.

FENNER, J. I am at an utter loss to understand what practical result is to flow from our mandate in this case.

The respondent judge, in his answer, informs us that the case in reference to which our interference is invoked, although held under advisement for an unusual length of time, is one involving complicated facts, a vast record, and numerous and difficult questions of law. Far from refusing to decide it, he tells us that he is and has been actively engaged in its study and investigation, and will decide it as soon as he has completed the examination and reached a conclusion, which, he believes, will be before the adjournment of the court. In confirmation of this statement he has exhibited to this Court the huge record which filled up no inconsiderable portion of the private office of the clerk.

What more, I would ask, can our mandamus require of him than what he is doing and proposes to do? Is it to be supposed that, when our mandate reaches him, he is to decide the case out of hand, whether he has reached a conclusion or not? Shall he toss up a penny and give judgment for plaintiff or defendant, as chance may determine?

When we are called upon to enforce our mandamus by process for contempt, what shall we do, if he makes then the same return which he makes now? Shall we fine or imprison a judge for not deciding when he tells us that notwithstanding due diligence, his mind has not yet reached a conclusion as to how he should decide?

In my view, the judicial function is the most sacred of all the trusts confided to man. It involves something more than a mere exercise of the will. Its exercise requires conviction of the mind and satisfaction of the conscience. The power is not lodged in legislatures or supreme courts to dictate to the judicial mind, "Be convinced," to the judicial

conscience, "Be satisfied"; and that judge would be unworthy of his office, who, without a mind convinced and a conscience satisfied, would, under any compulsion, decide upon the controverted rights of his fellow-citizens submitted to him under the solemn sanction of his official oath.

From the very nature of things it is evident that the act of the legislature referred to is an unwarrantable encroachment of the legislative upon the judicial power and is mere *brutum fulmen,* in so far, at least, as specific performance of the duty imposed of deciding within thirty days is concerned. Whether the penalty denounced, or other proper penalties for dilatoriness in the discharge of judicial duty may be enforced or not, is a question not before us.

It is equally clear that such a case as the one here presented is not within the contemplation of the provision of Art. 838 of the Code of Practice.

That provision obviously refers to wilful acts of a judge, such as a *refusal* to decide or a failure to take up a cause for consideration with a view to decision or to cases in which the delay is obviously unnecessary and not in good faith. In such a case he might be ordered to *consider* and *determine* the cause, certainly never to *decide* without *considering.*

When, as in this case, we find the judge engaged in the active consideration of the cause with a view to speedy decision, it does seem to me that we exercise an unwarranted interference when we assume to order him peremptorily to decide forthwith.

For these reasons, I most earnestly dissent from the opinion and decree herein.

---

When a mandamus has been made peremptory commanding an inferior judge to decide a case without further delay and he disobeys or fails to obey that mandate, the Supreme Court will order the recalcitrant judge to be arrested and imprisoned until he has obeyed its mandate.

---

MANNING, J. Our mandate to the respondent judge to decide without further delay the cause wherein the relator is plaintiff and R. P. Aldige and Jules Aldige are defendants having been sent down and not having been obeyed, the relator has moved that the judge shew cause why an order of arrest and imprisonment should not issue thereon.

The judge answering disclaims that his non-decision of the cause is due to contempt of the authority of the court or to any desire to disobey or evade its mandate, and avers that he construed it to mean that

State ex rel. Martin vs. Judge.

he should examine the cause with all possible diligence and decide it according to the law and the evidence. He states that he has been "faithfully engaged in the preparation of his opinion every spare moment of his time for a long period prior to the application for a mandamus, and that as soon as he can finish this opinion, which will probably be in the course of the following week, he will render judgment as required in the mandate." If however he has misconstrued our mandate he begs that we will instruct him what judgment he shall render.

It is beyond our province to instruct or our power to command what judgment shall be rendered in the suit at its present stage. We can only order him to proceed to judgment. We have done that, and the Code of Practice directs "if he does not obey, an order of arrest shall issue and he shall be imprisoned until he has rendered obedience." art. 843.

The terms of the article imply that all the reasons of the judge for his non-decision of the cause shall have been heard and passed on when the mandamus was made peremptory, for the language is imperative, "if his answer is considered insufficient, then a peremptory mandate shall issue" and the penalty of his disobedience shall be arrest and imprisonment.

Therefore the reasons now given for disobedience are merely those given or which should have been given why our peremptory mandate should not issue. That matter is closed and our decree rendered thereon was unambiguous and not difficult to be construed.

The application for the mandamus was made on the fifth of the present month. It is now the twenty ninth and this term of our court must end to-morrow. We had hoped that as the respondent had been preparing his opinion long before the application for the writ was made, we should have had the satisfaction of knowing that its completion and the rendition of a judgment in the cause had relieved us of performing a disagreeable duty.

The law has given the relator the remedy now invoked by him and it has very distinctly and directly imposed on us the obligation to apply it. We have nothing to do with its reasonableness or unreasonableness.

Since however the respondent informs us that he will probably be ready to decide the cause within next week, we shall suspend the execution of the order for his imprisonment for one week from to day.

It is therefore ordered and decreed that the respondent Henry L. Lazarus be arrested and imprisoned in the jail of this parish until he

has obeyed the mandate of this court heretofore issued to him in the proceedings for a mandamus in this cause. And it is further ordered that the execution of this decree is suspended for one week from this day, that is to say this suspension expires with Friday the 5th. day of June next.

### DISSENTING OPINION.

FENNER, J. While I adhere strenuously to the views expressed in my dissenting opinion in this case, yet, as the decree therein rendered has now become final, it might be my duty to join in its enforcement; and if I were satisfied that the mandate of this Court had been willfully disobeyed, I should perhaps be bound to concur in inflicting the penalties imposed by law.

But when, in answer to this rule for his attachment, the respondent judge appears at our bar and, respectfully purging himself of all intentional disrespect, contempt or disobedience, declares that he is making all possible efforts to comply with our order, that he has been diligently studying the questions involved in the case which he is ordered to decide and maturing his conclusions thereon, with a view to render speedy judgment, as he expects to be able to do within the ensuing week, I fail to discover such disobedience of our mandate as is contemplated by art. 843 of the Code of Practice, and find no warrant of law justifying us in proceeding, under these circumstances and at this time, to the harsh remedy of imprisonment.

If a court had issued a mandate ordering a party to remove a house forthwith, it would scarcely be deemed a punishable disobedience if the party was engaged in tearing down the house with a view to its removal. It is surely not more necessary to tear down a house before removing it, than it is for a judge to investigate the facts and consider the law of a case before deciding it.

Therefore, accepting the return of the judge as true, I consider that he is obeying instead of disobeying the mandate of this Court, under the only reasonable construction that can be placed upon it.

The contingency, therefore, for the issuance of an attachment, provided by law, has not, under my view, arisen.

The consideration due to the official character of respondent should prompt us to accept without reserve the sincerity of his assurances that he is making due efforts to comply with our order, and will do so as soon as practicable and within a reasonable delay. I cannot see the necessity or propriety of issuing an order of attachment, even under a suspensive condition.

State ex rel. Edwards et al. vs. Sheriff et al.

The powers of control over the action of inferior judges confided to this Court are of a very grave and delicate character, and should be exercised only with the most scrupulous caution and respect for their rights and privileges, and for the dignity of their office. And particularly should the derogatory penalty of imprisonment be avoided, unless absolutely essential to punish wilful contempt or persistent denial of justice.

In this case, a judgment final at any time before the adjournment of his court in July will accomplish all the necessities of justice and enable the inevitable appeal to reach us at the earliest possible return-day, viz: in November next.

Believing, in accordance with his sworn return, that respondent is honestly striving to perform his duty under our mandate, and will seasonably comply with it, I see no necessity for the harsh proceeding invoked. While I shall ever be ready to vindicate with emphasis the just authority of this Court, I most respectfully dissent from the conclusion of the majority of the judges that this case, as now presented, is a proper one for resort to the unprecedented remedy of imprisonment of a judge.

I, therefore, dissent from the opinion and decree herein.