STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-522

THE CHICAGO TRIBUNE COMPANY, ET AL.

VERSUS

HONORABLE J. P. MAUFFRAY, JR., ET AL.

**********

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 35,858
HONORABLE THOMAS MARTIN YEAGER, JUDGE AD HOC

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, James T. Genovese, and Chris J. Roy, Sr.[*],
Judges.

REVERSED AND REMANDED.

Dan Brian Zimmerman
Mary Ellen Roy
Phelps Dunbar, L.L.P.
365 Canal St., Ste 2000
New Orleans, LA 70130-6534
Counsel for Plaintiff/Appellee:
The Chicago Tribune Company, et al.

---

[*]Honorable Chris J. Roy, Sr., participated in this decision by appointment of the
Louisiana Supreme Court as Judge Pro Tempore.

**Donald R. Wilson**
**Gaharan & Wilson**
**P. O. Box 1346**
**Jena, LA 71342**
**(318) 992-2104**
**Counsel for Defendants/Appellants:**
**Honorable John Philip Mauffray, Jr.**
**Steve H. Crooks, Clerk**

**James D. Caldwell**
**Attorney General**
**David G. Sanders**
**Patricia Hill Wilton**
**Assistants Attorney General**
**P. O. Box 94005**
**Baton Rouge, LA 70804-9005**
**(225) 326-6300**
**Counsel for Defendants/Appellants:**
**Honorable John Philip Mauffray, Jr.**
**Steve H. Crooks, Clerk**

**SAUNDERS, Judge.**

**FACTS AND PROCEDURAL HISTORY:**

This appeal arises from a writ of mandamus issued in the 28th Judicial District Court by the Honorable Thomas M. Yeager (hereinafter Judge Yeager), who was appointed by the Louisiana Supreme Court to preside *ad hoc* over a writ application filed in that district by Appellees (hereinafter "News Media").[**] The News Media's writ application sought to compel the Honorable J.P. Mauffray, Jr. (hereinafter Judge Mauffray), Judge for the 28th Judicial District Court, to open to the public the proceedings in *State of Louisiana in the Interest of Mychal Bell*, juvenile case number J-4002. Judge Mauffray had closed his courtroom to the public, citing the Louisiana Children's Code for the proposition that the juvenile proceedings before him were required by law to be confidential. It is unclear from the record before us whether Judge Mauffray cited any other reasons for closing the proceedings to the public.

Prior to filing the writ of mandamus, the News Media had filed intervention pleadings, seeking, among other things, to have the court proceedings opened to the public. However, when the intervention pleadings were presented for filing, the Honorable Steve H. Crooks (hereinafter Clerk Crooks), Clerk of Court for the 28th Judicial District Court, time-stamped the pleadings, but did not file them. Judge Mauffray and Clerk Crooks (hereinafter sometimes referred to collectively as the

---

[**]Plaintiffs-Appellees include: The Chicago Tribune Company, publisher of the *Chicago Tribune*; Los Angeles Times Communications LLC, publisher of the *Los Angeles Times*; Cable News Network, Inc. d/b/a CNN; The Hearst Corporation, majority owner of WDSU-TV in New Orleans and WAPT-TV in Jackson, and publisher of the *Houston Chronicle*, the *San Antonio Express-News*, and the *Beaumont Enterprise*; Belo Corp., publisher of the *Dallas Morning News* and owner of WWL-TV in New Orleans, WFAA-TV in Dallas, KHOU-TV in Houston, KVUE-TV in Austin, and KENS-TV in San Antonio: The New York Times Company, publisher of *The New York Times*, the (Houma) *Courier* and the (Thibodaux) *Daily Comet*; ABC, Inc.; Gannet Satellite Information Network, Inc., publisher of *USA Today*; Alexandria Newspapers, Inc., publisher of the *Town Talk*; Gannet River States Publishing Corporation, publisher of the (Monroe) *News-Star*, the (Shreveport) *Times*, the (Lafayette) *Daily Advertiser*, and the (Opelousas) *Daily World*; and The Associated Press, collectively referred to as the "News Media."

"28th Judicial District Court")conceded, in brief and at oral argument, that it was inappropriate for Clerk Crooks not to file the intervention pleadings and offered to file them if presented again by the News Media. However, Judge Mauffray informed the News Media that, in any event, the intervention pleadings would not be set for hearing timely. Thus, the News Media decided to file a writ of mandamus. At the time of the writ application, the News Media were strongly interested in the case, as it involved one of the "Jena Six" defendants, which litigants were receiving national attention.

Judge Mauffray recused himself from hearing the writ application, and Judge Yeager, presiding *ad hoc*, granted the News Media's application and issued a writ of mandamus, compelling Judge Mauffray to open the juvenile proceedings to the public. Judge Mauffray never complied with the writ of mandamus. In oral argument before this court, the News Media requested access to all records of the proceedings, including pre-adjudication records.

Judge Mauffray and Clerk Crooks, in their representative capacities as the only judge and clerk of court for the 28th Judicial District Court respectively, appeal on behalf of that court, asserting three assignments of error.

**ASSIGNMENTS OF ERROR:**

1.  Did the district court have jurisdiction to issue a writ of mandamus to compel a district judge to perform mandatory or purely ministerial duties?

2.  Did the News Media's writ of mandamus seek to compel performance of a discretionary act?

3.  Did the News Media have standing to assert a right to attend and gain access to records of juvenile proceedings numbered J-4002?

**MOOTNESS:**

Before addressing appellants' assignments of error, this court must determine, as a threshold issue, whether this case presents a justiciable controversy or whether it is moot. It is "well settled that courts will not decide abstract, hypothetical or moot controversies or render advisory opinions with respect to moot controversies . . .". *Cat's Meow, Inc. v. City of New Orleans Through Dept. of Finance*, 98-601 (La. 10/20/98), 720 So.2d 1186, 1193. Courts require that cases submitted for adjudication be justiciable, ripe for decision, and not brought prematurely. *St. Charles Parish Sch. Bd. v. GAF Corp.*, 512 So.2d at 1165(1987).

> A "justiciable controversy" connotes, in the present sense, an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgement of the court may effectively operate through a decree of a conclusive character.

*Abbot v. Parker,* 249 So.2d 908, 918 (La.1971). In determining whether this case constitutes "an existing actual substantial dispute,"this court, on its own motion, takes judicial notice of the fact that the proceedings in *State of Louisiana in the Interest of Mychal Bell*, juvenile case number J-4002, ended with a plea agreement between Mr. Bell and the State.[***] Thus, it is unclear what practical relief, if any, would result from a judgment by this court. However, the United States Supreme Court has ruled in a similar case that, even where a judicial proceeding has long since ended, jurisdiction of the court is not, "necessarily defeated by the practical termination of a contest

---

[***] The Louisiana Code of Evidence art. 201(B) provides that a court may take judicial notice of a fact that is either: (1) [g]enerally known within the territorial jurisdiction of the trial court; or (2) [c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

which is short-lived by nature. . .. If the underlying dispute is 'capable of repetition yet evading review'. . .it is not moot." *Richmond Newspapers, Inc., et al. v. Virginia*, 448 U.S. 555, 563 (1980) (citations omitted).

In this case, the News Media is still seeking access to the court records in Mychal Bell's juvenile proceedings. It is reasonably foreseeable that other juvenile proceedings involving a crime of violence may be closed by other judges without any more showing of need than is presented on this record. Further, some juvenile delinquency proceedings, such as those ending in plea bargains, will be of such short duration that a closure order "will evade review." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 547(1976). As such, this court will address the issues presented herein.

**ASSIGNMENT OF ERROR #1**

The 28th Judicial District Court first argues that a district court lacks jurisdiction to hear an application for a writ of mandamus against a district judge. We agree.

"The writ of mandamus lies to compel the judge of an *inferior court* to perform any of the duties required of him by law. . .". *State ex. rel. Wise v. S.L.*, 32 La.Ann. 977 (1880) (emphasis added) . Furthermore, the Corpus Juris Secundum states that:

> As a general rule, a court has power to issue a writ of prohibition to restrain an inferior court, but it cannot issue such a writ against itself, or a branch of the same court, or a judge of that court. Moreover, it cannot issue the writ against a court, or judicial officer, of equal rank . . . Ordinarily, the writ may issue from . . . a court which has appellate jurisdiction over the inferior tribunal.

72A C.J.S. Prohibition § 44. The News Media assert in their reply brief that the 28th Judicial District Court, as represented by Judge Mauffray and Clerk Crooks, has

4

waived or is estopped from challenging the jurisdiction of that court to issue a writ of mandamus against a district judge. However, La.CodeCiv.P. art. 3 states that:

> The jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties. A judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void.[****]

When Clerk Crooks failed to file the News Media's intervention pleadings, the News Media could have done one of two things. First, an application to compel a clerk of court to file a petition could have been made in the first instance in the district court. The duty of a clerk of court to file papers presented to him is purely ministerial, and he may not refuse to perform it. An application to compel him to discharge any of his duties should be addressed in the first instance to the district court.

Second, the News Media could have filed a writ application in this court. We understand that the News Media's concerns about the time-sensitive nature of their demands led them to seek a writ of mandamus against Judge Mauffray. Louisiana Code of Civil Procedure Article 3862 provides that, "where the delay involved in obtaining ordinary relief may cause injustice," a court may issue a writ of mandamus. However, a judge is "powerless to grant or refuse" a writ of mandamus against himself, and Judge Mauffray was therefore obliged to recuse himself. *Italian Homestead Ass'n v. Lewis Hartman-Salmen Co., Inc.*, 139 So. 769, 770 (1932). This court would have been the appropriate court in which to file the News Media's writ application.

---

[****]Because the writ of mandamus issued by the district court in this case is void for lack of subject matter jurisdiction, this court need not reach the merits of the contents of the mandamus.

Yet, the News Media assert in their brief that they could not appeal to this court due to Clerk Crooks' refusal to file their intervention pleadings. Appellees claim that, "they can't appeal to the Third Circuit something that's not filed." However, the Supreme Court of Louisiana addressed a similar situation in *State v. Judge Bermudez* 14 La. 478 (1840), in which a judge refused to act in accordance with his duties under the law. The Court reasoned:

> It is competent to introduce new forms of proceedings, by which the judicial acts of other courts, in such cases, may be revised in this, and is not restricted to an appeal, technically so called, as the exclusive form. Cases may well be supposed, in which a formal appeal could not be taken, and the judgment of the appellate court pronounced, after hearing both parties, from the impossibility of making an appellee. . . Our judicial system would be imperfect, if the errors of a judge in such a case, could not be corrected. . .The right to issue a mandamus to courts of inferior jurisdiction, has always been asserted whenever such mandate became necessary for the exercise of appellate jurisdiction of this court. *Id*. at 480.

Thus, in a situation like this, it is not impossible to bring a writ of mandamus to a superior court where no pleading or writ application has first been filed in the inferior court.

We reverse.

**ASSIGNMENT OF ERROR #2**

Appellant asserts that the News Media sought a writ of mandamus to compel a discretionary act. We disagree.

The Louisiana Children's Code makes it clear that, in cases such as those involving Mr. Bell, the judge has no discretion whatsoever to close the proceedings to the public.

Louisiana Children's Code Article 407(A) provides:

6

A. With the exceptions of delinquency proceedings pursuant to Article 879, child support proceedings, traffic violations pursuant to Chapter 2 of Title IX in parishes with a population between three hundred eighty thousand and four hundred thousand, and misdemeanor trials of adults pursuant to Chapter 4 of Title XV, proceedings before the juvenile court shall not be public. However, *the court shall allow* the proceedings to be open to the public when the alleged delinquent act committed by the child would be considered a crime of violence as defined in R.S. 14:2(B), or when the alleged delinquent act would be a second or subsequent felony-grade adjudication. (emphasis added)___

Louisiana Children's Code Article 879(B) echoes Article 407,  providing in pertinent part:

B. All proceedings in a juvenile delinquency case involving a crime of violence as defined in R.S. 14:2(B) or a delinquent act which is a second or subsequent felony-grade adjudication shall be open to the public.[*****]_____

Louisiana Civil Code Article 9 states that, "[w]hen a law is clear and unambiguous. . . the law shall be applied as written. . ." The articles above unequivocally require a judge to open to the public all juvenile proceedings that meet the stated requirements. It appears from the record that there is no dispute between the parties as to the fact that the proceedings the News Media sought to attend involved both a crime of violence as defined by La. R.S. 14:2(B) and a subsequent felony-grade adjudication. Thus, the statute leaves the judge presiding over such proceedings without any discretion over whether or not the proceedings will be open to the public.

**ASSIGNMENT OF ERROR #3**

Appellant's final assignment of error argues that the News Media lacked standing to intervene and assert a right to attend and obtain records of a juvenile proceeding. We disagree. "In ruling on standing, it is both appropriate and necessary to look to the substantive issues for another purpose, namely to determine whether there is a logical nexus between the status asserted and the claim sought to be

---

[*****]We do not reach the issue of whether or not these statutes are constitutional, because that issue was not raised by the parties.

adjudicated." *Flast v. Cohen*, 392 U.S. 83, 101 (1968). The United States Supreme Court has ruled that, "the First Amendment can be read as protecting the right of everyone to attend trials so as to give meaning to [the freedoms of speech, press, and assembly]." *Richmond Newspapers, Inc., et al. v. Virginia*, 448 U.S. 555, 563 (1980). The Louisiana constitution guarantees the same liberties granted by the First Amendment, and is designed to serve the same purpose and provide at least coextensive protection. La.Const. 1974, Art. I, s 7; *State v. Franzone*, 384 So.2d 409, 411 (1980). Finally, the Louisiana Children's Code provides in articles 407 and 879 that all proceedings in juvenile delinquency cases involving a crime of violence as defined in R.S. 14:2(B) or a delinquent act which is a second or subsequent felony-grade adjudication shall be open to the public. The United States Supreme Court has recognized that the media is representative of the public's interest in open trials, and thus the media is clearly within the class of persons contemplated by the above mentioned reference to "the public" in the Louisiana Children's Code. *Maryland v. Baltimore Radio Show, Inc.*, 338 U.S. 912, 920 (1950).

With respect to the closure order in this case, there was no recognition of any right  under: the U.S. Constitution, the Louisiana constitution, or the Louisiana Children's Code for the public or press to attend the proceedings. Furthermore, it appears from the record before us that the trial judge made no findings to support closure. However, the Constitutional and statutorial guarantees laid out above, ". . .prohibit government from summarily closing courtroom doors. . ." *Richmond Newspapers, Inc. et. al.* at 556.

The media is often in the best position to champion the important interests that both the media and the public share in the rights and freedoms discussed above. In

8

order to give meaning to these rights and freedoms, "representatives of the press and general public 'must [generally] be given an opportunity to be heard on the question of their exclusion.'" *Globe Newspaper Co. v. Superior Court for Norfolk Cty*., 457 U.S. 596, 609 n. 24 (1982) (quoting *Gannet Co. v. DePasquale*, 443 U.S. 368, 401 99 S.Ct. 2829,2916 (1979) [Powell, J., concurring]). In this case, the News Media may not be acting as "intervenors" in the strictest sense. However, the News Media's request to "intervene" is, at its heart, a request to be heard regarding their exclusion from the courtroom.

"Under the inherent powers doctrine, a court possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law." *State v. Umezulike*, 03-1404 (La. 2/25/04), 866 So.2d 794, 798. This "inherent power" of the judiciary combined with the interests of judicial economy and responsibility mandate that the district court presiding over the proceedings in question has the authority to act and should deal with the issue. To conclude otherwise would be inconsistent with the Supreme Court's recognition of "the demands of a democratic society," which require: that the public should know what goes on in courts by being told by the press what happens there, to the end that the public may judge whether our system of criminal justice is fair and right. *Maryland v. Baltimore Radio Show, Inc*, at 920. Furthermore, to deny the media standing to challenge closure of courtroom proceedings or demand access to records of proceedings required to be public would rob the relevant statutes as well as the First Amendment of meaning with respect to the public's deep interest in trials.

**CONCLUSION:**

Appellant raised three assignments of error. We rule that: (1) the trial court

9

lacked jurisdiction to issue a writ of mandamus against a district judge; (2) a judge lacks discretion over the opening of juvenile proceedings to the public when such proceedings involve a crime of violence as defined in La.R.S. 14:2(B) or a delinquent act which is a second or subsequent felony-grade adjudication; and (3) the News Media has standing to be heard regarding their exclusion from the courtroom. For the above stated reasons, we reverse and remand for proceedings not inconsistent with this opinion. We hereby order the Clerk of Court for the 28th Judicial District Court to file the News Media's intervention pleadings and, upon request of any party, that said pleadings be set for hearing expeditiously. All costs associated with this appeal are to be shared equally between the parties.

**REVERSED AND REMANDED.**