# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 22-452

**GANNETT RIVER STATES PUBLISHING CORPORATION
D/B/A DAILY ADVERTISER**

**VERSUS**

**15TH JUDICIAL DISTRICT ATTORNEY DONALD D. LANDRY**

**********

ON APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20221252
HONORABLE KRISTIAN EARLES, DISTRICT JUDGE

**********

**JONATHAN W. PERRY
JUDGE**

**********

Court composed of Elizabeth A. Pickett, Jonathan W. Perry, and Ledricka J. Thierry, Judges.

**AMENDED, AND AFFIRMED AS AMENDED.**

Gary McGoffin
John S. Cook
DURIO, McGOFFIN, STAGG & GUIDRY
220 Heymann Boulevard
Post Office Box 51308
Lafayette, LA 70505
(337) 233-0300
**COUNSEL FOR PLAINTIFF/APELLANT**:
Gannett River States Publishing Corporation
d/b/a Daily Advertiser

Joy C. Rabalais
H. Edward Barousse, III
Jordan John Henagan
Grant R. Schexnailder
K. Elizabeth Heinen
200 West Congress Street, Suite 1000
Post Office Box 4305
Lafayette, LA 70502-4305
(337) 232-1604
**COUNSEL FOR DEFENDANT/APPELLEE**:
District Attorney Donald Landry, Individually and in his
Capacity as District Attorney for the 15th Judicial District of Louisiana

Lawrence E. Marino
Cearley W. Fontenot
Daniel J. Phillips
OATS &  MARINO
Gordon Square, Suite 400
100 E. Vermilion Street
Lafayette, LA 70501
(337) 233-1100
**COUNSEL FOR DEFENDANT/APPELLEE:**
Louis J. Perret, in his capacity as Lafayette Parish Clerk of Court

**PERRY, Judge.**

The issue before this court is whether a newspaper can access records of juvenile case proceedings that involve crimes of violence. For the following reasons, we dismiss the newspaper's petition against the clerk of court for failure to state a right of action, and affirm the trial court's dismissal of the newspaper's claim against the district attorney.

## FACTS AND PROCEDURAL HISTORY

On January 31, 2022, *The Daily Advertiser*, part of the USA Today Network, emailed Donald Landry, the District Attorney for the Fifteenth Judicial District ("DA"), requesting documents contained in the prosecution of two unnamed juvenile defendants in the death of Matthew Carter. Citing La.Ch.Code arts. 407 and 879, as well as *Chicago Tribune v. Hon. J. P. Mauffray*, 08-522 (La.App. 3 Cir. 11/5/08), 996 So.2d 1273,[1] the following documents were requested:

1. Photocopies of any plea agreements, sentencing documents, motions to dismiss or amend charges; and any other documents related to the conclusion of this case, as well as photocopies of all Minute Clerk entries for hearings and orders related to the above documents.

2. A photocopy of the court order and any supporting motions, documents, or evidence filed in support of the blanket order sealing the complete record from public view and access.

3. A photocopy of the Minute Clerk entry for the order sealing the entirety of the indexes and records.

On February 2, 2022, the DA declined to produce the records. In reply to the request of the *Daily Advertiser*, the DA stated:

> We would direct your attention to Louisiana Children's Code Article 412 which covers the confidentiality of records, disclosure exceptions and sanctions. From our interpretation of Article 412(A) the District Attorney's Office is barred from releasing the information you seek.

---

[1] Among other holdings, in *Chicago Tribune*, 996 So.2d at 1280, this court stated, "a judge lacks discretion over the opening of juvenile proceedings to the public when such proceedings involve a crime of violence as defined in La.R.S. 14:2(B) or a delinquent act which is a second or subsequent felony-grade adjudication."

. . . .

> A further reading of Article 412 does not provide for an expressly authorized disclosure exception to the media or the public in general.
>
> Again, Louisiana Children's Code Articles 407 and 879 pertain to the participation of the public at juvenile delinquency proceedings that involve a crime of violence. Nowhere in either Code article or the comments does it expressly authorize the District Attorney to turn over juvenile records from matters previously adjudicated.

Thereafter, the *Daily Advertiser* and the DA exchanged emails in which they reiterated and expounded on their positions.

On March 11, 2022, the *Daily Advertiser* filed its Petition for Declaratory Judgment, Mandamus, and Injunction pursuant to La.R.S. 44:1–42, the Louisiana Public Records Act ("LPRA"). Named as defendant was the DA, individually and in his official capacity as District Attorney, insofar as he was the custodian of the juvenile records sought. In its petition, the *Daily Advertiser* sought: a judicial declaration that the pleadings and court records related to the prosecution of the two unnamed juvenile defendants in the killing of the victim are public records pursuant to the provisions of La.R.S. 44:12.1(A), that the DA is the custodian of those pleadings and court records, and that those pleadings and court records are subject to inspection copying, or reproduction. It also sought a writ of mandamus compelling the DA to produce those pleadings and court records, and an injunction prohibiting the custodian from withholding any pleadings or court records regarding the prosecution of unnamed juvenile defendants in cases involving crimes of violence as defined in La.R.S. 14:2(B).

Shortly thereafter, the *Daily Advertiser* filed a First Amended Petition for Declaratory Judgment, Mandamus, and Injunction, naming an additional defendant, Louis J. Perret in his capacity as Lafayette Parish Clerk of Court ("Clerk of Court").

2

In that amended petition, the *Daily Advertiser* reiterated by reference all allegations made in its original petition and prayed for the same relief.

After the DA and the Clerk of Court answered the lawsuit of the *Daily Advertiser* and a hearing was held, the trial court concluded "it seems like there is a reason to have a dispute, but I am going to tell you that I think [La.Ch.Code art.] 412 and [La.R.S.] 44:4.1(B)39 pretty much speak[] [to] this and mandate[] that the records remain confidential." In conformity with those reasons, the trial court denied the *Daily Advertiser*'s petition and dismissed it with prejudice. After a judgment to that effect was signed on April 14, 2022, the *Daily Advertiser* filed a motion for a devolutive appeal.

## NO RIGHT OF ACTION

Before we reach the *Daily Advertiser*'s assignments of error, we first address, on our own motion, whether the *Daily Advertiser*'s petition has stated a right to bring this suit against the Clerk of Court.

"[A] peremptory exception of no right of action may be noticed by either the trial or appellate court sua sponte where the record supports such an action." *Gorum v. La. Hosp. Ass'n. Emp. Benefit Trust*, 95-468, p. 3 (La.App. 3 Cir. 11/2/95), 664 So.2d 662, 664, citing La.Code Civ.P. art. 927. The exception of no right of action is appropriate procedurally when questioning whether a plaintiff has any interest in judicially enforcing a right. *Greenbriar Nursing Home, Inc. v. Pilley*, 93-2059 (La. 5/23/94), 637 So.2d 429; *Byrd v. Int'l Paper Co.*, 594 So.2d 961 (La.App. 3 Cir. 1992).

Louisiana Revised Statutes 44:31 establishes a general provision that provides access to public records. The remedy available to a person who has been denied access to public records is provided in La.R.S. 44:35(A) which states:

3

Any person who has been denied the right to inspect or copy a record under the provisions of this Chapter, either by a final determination of the custodian or by the passage of five days, exclusive of Saturdays, Sundays, and legal public holidays, from the date of his request without receiving a final determination in writing by the custodian, may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney's fees, costs and damages as provided for by this Section, in the district court for the parish in which the office of the custodian is located.

Recently in *Pineville City Court v. City of Pineville*, 22-336, p. 5 (La. 1/27/23), ___So.3d___,___ (footnotes omitted), our supreme court stated:

This Court has routinely held that the only circumstances under which courts may cause writs of mandamus to issue are where the actions sought to be performed are imposed by law and are purely ministerial in nature. *See Hoag v. State*, 2004-0857, p. 6 (La. 12/1/04), 889 So.2d 1019, 1023. " 'Mandamus is a writ directing a public officer ... to perform' 'a ministerial duty required by law.' " *Jazz Casino Company, L.L.C. v. Bridges*, 2016-1663, p. 5 (La. 5/3/17), 223 So.3d 488, 492 (citing La. C.C.P. arts. 3861 and 3863). "A 'ministerial duty' is one 'in which no element of discretion is left to the public officer,' in other words, 'a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law.' " *Id.* (citing *Hoag*, 2004-0857, p. 7, 889 So.2d at 1024). "If a public officer is vested with any element of discretion, mandamus will not lie." *Id.* (citing *Landry v. City of Erath*, 628 So.2d 1178, 1180 (La. App. 3 Cir. 1993), *writ denied*, 1994-0275 (La. 3/25/94), 635 So. 2d 235).

In the present case, there is no allegation made in the *Daily Advertiser*'s petition or amended petition that it ever directed a request to the Clerk of Court for access to the public records at issue or that the Clerk of Court denied that request.[2] Both these elements are required in La.R.S. 44:35(A) before a person may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief. Without such a request and denial, the *Daily Advertiser* does not have a right of action to seek the writ of mandamus provided in La.R.S. 44:35(A).

---

[2] In his answer, the Clerk of Court admitted that the Lafayette Parish Clerk of Court Office is a public body as defined by the LPRA. However, no allegation was made in the *Daily Advertiser*'s pleadings that the Clerk of Court was the custodian of the records sought.

4

Moreover, the *Daily Advertiser*'s request for a declaratory judgment is likewise flawed. Declaratory relief is available only to decide a justiciable controversy, meaning a present "existing actual and substantial dispute," involving the legal relations of parties with real adverse interests. *Molinere v. Lapeyrouse*, 16-991, p. 8 (La.App. 1 Cir. 2/17/17), 214 So.3d 887, 893. *See also Stoddard v. City of New Orleans*, 246 La. 417, 165 So.2d 9 (1964). Moreover, there must exist a concrete, justiciable controversy framing the facts in order to avoid the rendering of an advisory opinion. *Peterson v. La. Pub. Serv. Comm'n*, 94-2478 (La.App. 1 Cir. 10/6/95), 671 So.2d 460, 461.

In the context of a petition for declaratory judgment,

> [a] 'justiciable controversy' connotes . . . an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character.

*Abbott v. Parker*, 259 La. 279, 249 So.2d 908, 918 (1971). The petitioner must have "a legally protectable and tangible interest at stake, and the dispute presented should be of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. The justiciable controversy requirement is related to the exceptions of no right of action and no cause of action, insofar as "there is no right . . . of action [for declaratory judgment] when there is no justiciable controversy." *Ricard v. State*, 544 So.2d 1310, 1312 (La.App. 4 Cir. 1989). Considering the *Daily Advertiser*'s failure to request the records from the Clerk of Court and a corresponding rejection of that request by the Clerk of Court, we are not presented with a justiciable controversy to support the *Daily Advertiser*'s petition for declaratory relief.

For these reasons, we find the *Daily Advertiser* has failed to state a right of action against the Clerk of Court. Thus, we dismiss the *Daily Advertiser*'s action against the Clerk of Court.[3]

## APPELLANT'S ASSIGNMENTS OF ERROR

The trial court erred: (1) by failing to declare the DA to be custodian of all juvenile prosecution records for violent criminal acts; (2) by failing to uphold La.R.S. 44:31(B)(3) which provides that: the burden of proving that a public record is not subject to inspection, copying, or reproduction shall be with the custodian; (3) by failing to uphold the provisions of La.Const. art. 12, § 3 which mandates the public's right to "examine public documents" must be construed liberally in favor of free and unrestricted access to public documents and can only be denied when a law, specifically and unequivocally, provide otherwise; (4) in refusing to allow testimony from the *Daily Advertiser's* reporter regarding the inaccessibility of juvenile proceedings involving crimes of violence due to the custodian's present procedures; and (5) by failing to find that the records of a juvenile prosecution for violent crimes constitute a part of the public "proceedings" which the public may view pursuant to the express provisions of Children's Code Article 879(B)(1).

Finding the *Daily Advertiser*'s fifth assignment of error dispositive, we will not address its other assignments of error.

## APPELLANT'S ARGUMENT

The *Daily Advertiser* contends that this public records litigation involves the interplay between three articles in the Louisiana Children's Code, articles 407(A),

---

[3] Louisiana Code of Civil Procedure Article 934 provides that when "the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment[.]" It further provides that if the grounds for the exception cannot be removed, the demand "shall be dismissed." Because of our ultimate resolution of this case, we find that amendment is not proper.

879(B)(1), and 412(A), and the word "proceedings" utilized in each article. It argues that when the DA advocates that proceedings are restricted to hearings, its interpretation ignores the legislature's choice of the word "proceedings" rather than "hearings" when La.Ch.Code arts. 407 and 879 were drafted. Additionally, it asserts that such a restrictive definition contravenes Black's Law Dictionary's definition of "proceeding" as the regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. Finally, it further argues that the interpretation adopted by the DA is illogical from a practical perspective as it relates to the protection of a juvenile's privacy interests. Under their interpretation, a journalist could attend a juvenile hearing involving a crime of violence where it could learn of the identity of the accused juvenile, the charges, and the details of the crime of violence. However, it would be denied access to the records of the proceedings.

### APPELLEE'S (DA) ARGUMENT

The DA first asserts that it does not contest that he is the records custodian of the records kept regarding the prosecution of juvenile offenders.[4] Thus, he asserts that the *Daily Advertiser*'s contention that the trial court erred in failing to declare the DA was custodian of the records sought does not require this court to address this question as it is not truly in dispute. The DA also concedes that the issue before this court is a legal one subject to de novo review on the appellate level.

The DA next contends the trial court did not err in failing to uphold the provision of La.R.S. 44:31(B)(3) which requires the custodian of records to prove that the reports sought are not subject to production. The clear wording of La.R.S.

---

[4] In his answer, the DA admitted that the 15th Judicial Court District Attorney's Office is a public body as defined in the Louisiana Public Records Law and that the DA is the custodian of the records sought.

44:4.1(B)(39) incorporates by specific wording that the records sought are exempt from production. Moreover, the DA showed that the provisions of La.Ch.Code art. 879(B) address the proceedings involving juveniles accused of crimes of violence and that such proviso does not encompass the records of such adjudication. The legislative history clearly shows that the use of the word "proceedings" did not include the "records" of the juvenile adjudication. Had the legislature intended to include records, it could have so provided it in La.Ch.Code art. 412. To the contrary, the legislature only saw fit to open the hearings of juveniles accused of crimes of violence as evident in the wording of La.Ch.Code art. 879. To rule more expansively, as urged by the *Daily Advertiser* would require rewriting the legislation—a role this court will not take part in.

In support of its argument, the DA points out that in 2011 the legislature amended La.Ch.Code art. 879(B)(1) to open the proceedings to the public when a juvenile was accused of a violent crime. At that time, the legislature did not amend either La.Ch.Code art. 412 or La.R.S. 44:4.1(B)(39) to enlarge an exception to include records. Thus, it is evident that the legislature intended to keep records of all juvenile proceedings confidential and not subject to production under the LPRA. If the *Daily Advertiser* has a disagreement with that, it should approach the legislature to provide a more expansive interpretation to include juvenile records.

## LAW AND DISCUSSION

*Background*

Before we address the arguments now before us, we reiterate that juvenile proceedings are unique. In *State v. Brown*, 03-2788, pp. 14-15 (La. 7/6/04), 879 So.2d 1276, 1285-86 (citations omitted), our supreme court stated:

> The juvenile court movement began near the end of the nineteenth century because "reformers were appalled by adult procedures and

8

penalties, and by the fact that children could be given long prison sentences and mixed in jails with hardened criminals." The juvenile court movement combined new ideas about children with the new ideology of social control to remove children from the criminal justice system and to provide them with individualized treatment in a separate system. Under the guise of *parens patriae,* juvenile courts emphasized treatment, supervision, and control rather than punishment, and exercised broad discretion to intervene in the lives of young offenders. Characterizing intervention as a civil or welfare proceeding completed the separation of juvenile from criminal courts and allowed greater authority to control and supervise children.

Because of the rehabilitation rationale, the courts justified making the juvenile court less formal. Reformers modified courtroom procedures to eliminate any implication of a criminal proceeding, adopted a euphemistic vocabulary, and endorsed a physically separate court building to avoid the stigma of adult prosecutions. The early reformers "believed that society's role was not to ascertain whether the child was 'guilty' or 'innocent,' ... [t]he child—essentially good, as they saw it—was to be made 'to feel that he is the object of (the state's) care and solicitude,' not that he was under arrest or on trial." The purpose of sanctions would be for therapeutic and rehabilitative purposes, not for retribution or incapacitation.

In conformity with the special nature of the juvenile court, La.Ch.Code art. 101

states, in pertinent part:

[T]he role of the state in the family is limited and should only be asserted when there is a serious threat to the family, the parents, or the child; and that extraordinary procedures established by law are meant to be used only when required by necessity, and then with due respect for the rights of the parents, the children, and the institution of the family, and only to the extent that such procedures are not prohibited by the Louisiana Constitution of 1974, as amended.

Louisiana Children's Code Article 102 further states:

The provisions of this Code shall be liberally construed to the end that each child and parent coming within the jurisdiction of the court shall be accorded due process and that each child shall receive, preferably in his own home, the care, guidance, and control that will be conducive to his welfare. In those instances when he is removed from the control of his parents, the court shall secure for him care as nearly as possible equivalent to that which the parents should have given him. These Code provisions shall be construed to promote the stability of the family and to secure simplicity in procedure, fairness in adjudication and administration, and the elimination of unjustifiable delay.

*Statutory Interpretation*

As properly stated by the trial court and agreed to by the parties before us, whether the documents the *Daily Advertiser* sought were public records presents a question of law which requires statutory interpretation of the Children's Code and the LPRA. Statutory interpretation is reviewed on appeal under a de novo standard of review. *Broussard v. Hilcorp Energy Co.*, 09-449, 09-469 (La. 10/20/09), 24 So.3d 813.

In *Pociask v. Moseley*, 13-262, pp. 11-12 (La. 6/28/13), 122 So.3d 533, 540-541, the court stated:

> The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the legislature to enact the law. *In re: Succession of Boyter*, 99–0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128. The rules of statutory construction are designed to ascertain and enforce the intent of the legislature. *Id.; Stogner v. Stogner*, 98–3044, p. 5 (La.7/7/99), 739 So.2d 762, 766. Legislation is the solemn expression of legislative will, and therefore, interpretation of a law involves primarily a search for the legislature's intent. La.Rev.Stat. § 1:4 (2004); La. Civ.Code art. 2; *Lockett v. State, Dept. of Transp. and Development*, 03–1767, p. 3 (La.2/25/04), 869 So.2d 87, 90 [overturned on other grounds; see La.R.S. 13:5106]. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Civ.Code art. 9; *Lockett*, 03–1767 at p. 3, 869 So.2d at 90–91; *Conerly v. State*, 97–0871, p. 3–4 (La.7/8/98), 714 So.2d 709, 710–11.
>
> The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting it. *Boyter*, 99–0761 at p. 9, 756 So.2d at 1129; *Stogner*, 98–3044 at p. 5, 739 So.2d at 766. The statute must, therefore, be applied and interpreted in a manner that is consistent with logic and the presumed fair purpose and intention of the legislature in passing it. *Boyter*, 99–0761 at p. 9, 756 So.2d at 1129. This is because the rules of statutory construction require that the general intent and purpose of the legislature in enacting the law must, if possible, be given effect. *Id.; Backhus v. Transit Cas. Co.*, 549 So.2d 283, 289 (La.1989). It is presumed the intent of the legislature is to achieve a consistent body of law. *Stogner*, 98–3044 at p. 5, 739 So.2d at 766.

La. Civ.Code art. 13 provides that, where two statutes deal with the same subject matter, they should be harmonized if possible. *Kennedy v. Kennedy,* 96–0732, 96–0741, p. 2 (La.11/25/96), 699 So.2d 351, 358 (on rehearing). It is a well-settled rule of statutory construction that all laws dealing with the same subject matter must be construed *in pari materia.* La. Civ.Code art. 17; *Reed v. Washington Parish Police Jury,* 518 So.2d 1044, 1047 (La.1988). Statutes are *in pari materia*—pertain to the same subject matter—when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object. 2B Sutherland Stat. Const. § 51:3, p. 222 (7th ed.2012).

## ANALYSIS

Louisiana Constitution Article 12, § 3 states that "[n]o person shall be denied the right to observe the deliberation of public bodies and examine public documents, except in cases established by law." Although it has been held that this constitutional provision must be liberally construed in favor of free and unrestricted access to public documents, access can be denied "when a law, specifically and unequivocally, provides otherwise." *DeSalvo v. State*, 624 So.2d 897, 902 (La.1993); *Title Research Corp. v. Rausch*, 450 So.2d 933 (La.1984). In *Boren v. Taylor*, 16-2078, pp. 3-4 (La. 6/29/17), 223 So.3d 1130, 1131, the court stated, "[t]he legislature has further recognized that 'it is essential to the operation of a democratic government that the people be made aware of all exceptions, exemptions, and limitations to the laws pertaining to public records.' La. R.S. 44:4.1(A)." To further foster the people's awareness, "the legislature declared that 'all exceptions, exemptions, and limitations to the laws pertaining to public records shall be provided for in [the Public Records Law] or the Constitution of Louisiana.'" *Id.* "Any exception, exemption, and limitation to the laws pertaining to public records not provided for in the Public Records Law or in the Constitution of Louisiana has no effect." *Id.* Clearly, under the provisions of La.Const. art. 12, § 3, the legislature is authorized

11

to establish laws that provide exceptions to the right to observe the deliberation of public bodies and examine public documents.

Relying on that authority, the DA contends that La.R.S. 44:4.1(B) is a prime example of such an exemption for the Children's Code from the LPRA when it provides in pertinent part:

> The legislature further recognizes that there exist exceptions, exemptions, and limitations to the laws pertaining to public records throughout the revised statutes and codes of this state. Therefore, the following exceptions, exemptions, and limitations are hereby continued in effect by incorporation into this Chapter by citation:
>
> . . . .
>
> (39) Children's Code Articles . . . 404 [and] 412[.]

On the strength of La.R.S. 44:4.1(B), its specific reference to La.Ch.Code arts. 404 and 412, and the absence of laws that specifically and unequivocally provide otherwise, the DA argues that juvenile case proceedings do not encompass records and as expressly stated, case records "are confidential and shall not be disclosed" unless expressly authorized.

On the other hand, the *Daily Advertiser* asserts that La.Ch.Code arts. 407(A) and 879(B)(1) temper La.R.S. 44:4.1(B). Article 407(A) of the Children's Code provides that "[w]ith the exceptions of delinquency proceeding pursuant to Article 879 . . . , proceedings before the juvenile court shall not be public." And Article 879(B)(1) states that "[a]ll proceedings in a juvenile delinquency case involving a crime of violence as defined in R.S. 14:2(B) or a delinquent act which is a second or subsequent felony grade adjudication shall be open to the public." It argues that the word "proceedings" used in Articles 407 and 879 encompasses the hearing and the court records, and those "shall be open to the public."

12

The articles of the Children's Code direct our analysis of whether the *Daily Advertiser* should be entitled to the juvenile case records of these two youths. Although it cannot be denied that La.Ch.Code arts. 407, 412 and 879 use the word "proceedings" and arguably proceedings may be interpreted, as the *Daily Advertiser* urges, to include juvenile records, for the following reasons we find no merit to the *Daily Advertiser*'s contention.

Louisiana Children's Code Article 404 states, "Juvenile cases shall be docketed and handled separately from regular criminal and civil cases, and juvenile case records shall be confidential and kept separately." Although Article 404 mandates the confidentiality of juvenile case records, the word "proceeding" does not appear in it. Nonetheless, La.R.S. 44:4.1(B)(39) references La.Ch.Code art. 404 and specifically exempts those records from the LPRA. This specific provision guides and clarifies our determination.

In addition to the general directive of confidentiality provided in La.Ch.Code art. 404, discussion of Articles 407, 412, and 879 of the Children's Code is required. Common to these articles is the reference to "proceedings."

We first turn to the definition section of the Children's Code. Louisiana Children's Code Article 116(11) defines a juvenile proceeding or juvenile case as "a proceeding or case in which the court is exercising juvenile jurisdiction." However, this definition does not assist us in addressing the question now before us of whether "proceeding" is limited to the hearing which is open to the public or is broad enough to encompass the records associated with the adjudication hearing. Simply stated, the definition of a juvenile "proceeding" utilized in La.Ch.Code art. 116(11) is ambiguous for the purpose of our analysis and requires further interpretation.

13

When doubt exists as to the proper interpretation of a statute, the title or preamble may be used to determine legislative intent. *Anderson v. Ochsner Health Sys.*, 13-2970 (La. 7/1/14), 172 So.3d 579; *Authement v. Shappert Engineering*, 02–1631 (La. 2/25/03), 840 So.2d 1181. When statutory language is unclear, headings also may suggest an interpretation. *Sibley v. Bd. of Sup'rs of La. State Univ.*, 477 So.2d 1094 (La.1985); *Broussard v. F. A. Richard & Assocs., Inc.* 98-1167 (La.App. 3 Cir. 3/17/99), 732 So.2d 578, *writ denied*, 99-1048 (La. 6/4/99), 744 So.2d 625. Lastly, the position of an article in a code is an important consideration in its interpretation and application. *Succession of Lichtentag*, 363 So.2d 706 (La.1978).

Louisiana Children's Code Articles 407 and 412 appear in Title IV, Juvenile Court Administration. Article 407 is in Chapter 2, Scheduling and Conduct of Cases. As established in La.Ch.Code art. 407, the general rule is that "proceedings before the juvenile court shall not be public." However, La.Ch.Code art. 407 further recognizes that an exception to that general rule is provided in La.Ch.Code art. 879.

Article 412 is in Chapter 3, Records. Article 412 affirms the confidentiality of "[r]ecords and reports concerning all matters or proceedings before the juvenile court[,]" and further recognizes that they "shall not be disclosed except as expressly authorized by this Code." Accordingly, disclosure exceptions—none of which are applicable here—are expressly authorized in paragraphs (B), (C), (D), (E), (F), (G), and (H) of La.Ch.Code art. 412. Additionally, the confidentiality of juvenile records and reports is firmly established in La.Ch.Code art. 412 and is specifically recognized in La.R.S. 44:4.1(B)(39) as "exceptions, exemptions, and limitations to the laws pertaining to the public records" subject to the LPRA.

As established in La.Ch.Code art. 879(B), "[a]ll proceedings in a juvenile delinquency case involving a crime of violence as defined in R.S. 14:2(B) or a

delinquent act which is a second or subsequent felony grade adjudication shall be open to the public." Louisiana Children's Code Article 879 appears in Title VIII and is located in Chapter 13, Adjudication. The various provisions contained in Chapter 13 are all directed to the adjudication hearing and the effect of the adjudication order if the child is adjudicated delinquent. Particularly, we take notice that La.Ch.Code art. 879 appears under the heading, "**Presence at adjudication hearing; exclusion of witnesses**." The inclusion of Article 879 in the provisions which address the adjudication hearing and the heading which describes that article leads us to conclude that the use of the word "proceeding" in that article does not include the records of the adjudication hearing.

In reaching that conclusion, we are not swayed by the *Daily Advertiser*'s reliance on *Chicago Tribune*, 996 So.2d 1273. In that opinion this court stated, "The Louisiana Children's Code makes it clear that, in cases such as those involving [a crime of violence], the judge has no discretion whatsoever *to close the proceedings to the public*." *Id.* at 1279 (emphasis added). At no time did this court state that proceedings included the juvenile court records. More particularly, the opinion stated:

> It appears from the record that there is no dispute between the parties as to the fact that *the proceedings the News Media sought to attend* involved both a crime of violence as defined by La. R.S. 14:2(B) and a subsequent felony-grade adjudication. Thus, the statute leaves the judge presiding over such proceedings without any discretion over whether or not *the proceedings will be open to the public*.

*Id.* (emphasis added). As shown above, it is clear it was the attendance of the media at this juvenile proceeding that was at issue, not that the media also had access to the records of that adjudication. Thus, we find the *Daily Advertiser*'s reliance on this case is misplaced.

In summation, La.Ch.Code art. 404 (emphasis added) directs that "*juvenile case records shall be confidential* and kept separately." Likewise, La.Ch.Code art. 412 (emphasis added) directs that records and reports involving juvenile proceedings "are confidential and shall not be disclosed *except as expressly authorized* by this Code." The *Daily Advertiser* has failed to show an expressly authorized exception to that mandate of confidentiality and non-disclosure. Additionally, there has been no contention that the proceedings involving these two youths were not open to the public. Therefore, for the foregoing reasons we find no support for the *Daily Advertiser*'s contention that the word "proceeding" as used in the Children's Code encompasses the juvenile court record.

After reviewing the articles of the Children's Code and the LPRA, our interpretation comports with the mandate to keep juvenile records and reports confidential and respects the public's right to attend juvenile case hearings which involve a crime of violence. To conclude otherwise would require us to legislate from the bench, a course of action outside the authority of the courts. That authority rests with the legislature. *State v. Smith*, 99-606, 99-2094, 99-2015, 99-2019 (La. 7/6/00), 766 So.2d 501 (responsibility of the court is to enforce laws rather than legislate).

## DECREE

For the foregoing reasons, we dismiss the *Daily Advertiser*'s action against the Clerk of Court, finding that it failed to state a right of action against the Clerk of Court. In all other respects, we affirm the judgment of the trial court. All costs of this appeal are assessed to the *Daily Advertiser*.

**AMENDED, AND AFFIRMED AS AMENDED.**